**STOCK PURCHASE AGREEMENT** (the "Agreement"), made as of the 23rd day of October, 2017 (the "Effective Date"), by and between **SAMI OMAR** (the "Seller") and **SHARIF OMAR** (the "Buyer").

## RECITALS

**WHEREAS, LIPTIS PHARMACEUTICALS USA, INC.,** is a corporation duly formed and existing pursuant to the laws of the State of New York (the "Company");

**WHEREAS**, the Seller is the owner of forty-five (45) shares of the common stock of the Company, which represent forty-five percent (45%) of the issued and outstanding common stock of the Company (the "Shares");

**WHEREAS**, the Buyer is the owner of fifty-five (55) shares of the common stock of the Company, which represent fifty-five percent (55%) of the issued and outstanding common stock of the Company; and

**WHEREAS**, the Seller desires to sell to the Buyer, and the Buyer desires to buy from the Seller forty-four percent (44%) (the "Shares"), subject to the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1. **Sale of Shares**. For and in consideration of the Purchase Price (as hereinafter defined), effective as of Closing (as hereinafter defined), the Seller hereby sells and assigns the Shares to the Buyer, and the Buyer hereby purchases the Shares from the Seller.

    (a) The consideration for the Shares is the sum of One Hundred Thousand Dollars ($100,000) (the "Purchase Price"), payable in cash by wire transfer of immediately available funds simultaneously with the execution of this Agreement.

    (b) At the Closing, the parties hereto will execute and deliver any and all reasonable and required documents, and take all actions, necessary to effectuate the transfer of the Shares by the Seller to the Buyer, including as specifically set forth below.

    (a) At the Closing, the Seller shall deliver to the Buyer:

    (i) Stock certificates evidencing the Shares, if any exist, free and clear of all encumbrances, duly endorsed in blank or accompanied by stock powers or other instruments of transfer duly executed in blank, or if no such stock certificate exist, an affidavit from Seller attesting to his ownership of the Shares, in a form satisfactory to the Buyer.

    (ii) Such other instruments or documents as may be reasonably requested by the Buyer in order to consummate the transactions contemplated hereunder.

  (b) At the Closing, the Buyer shall deliver to the Seller:

    (i) The Purchase Price, payable as set forth in Section 1(a).

    (ii) Such other instruments or documents as may be reasonably requested by the Seller in order to consummate the transactions contemplated hereunder.

 2. **Closing**. The closing provided for herein (the "Closing") shall take place at the offices of Certilman Balin Adler & Hyman LLP, 90 Merrick Avenue, East Meadow, New York 11554, or remotely by the exchange of signature pages by email and telecopy, on the date hereof.

 3. **Representations of Seller**. The Seller represents and warrants to the Buyer as follows (the Seller acknowledges and agrees that the following representations and warranties are a material inducement to the Buyer's entering into this Agreement):[1]

  (a) **Ownership of Shares**. The Seller is the sole record and beneficial owner of the Shares, free and clear of all liens, pledges, security interests, encumbrances, restrictions, subscriptions, hypothecations, charges and claims of any kind whatsoever (collectively, "Liens"). The Seller has the absolute and unqualified right to transfer the Shares to the Buyer pursuant to the terms of this Agreement and the organizational documents of the Company. The Shares represent forty-four percent (44%) of the issued and outstanding capital of the Company.

  (b) **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Seller to enable him to enter into and carry out this Agreement and the transactions contemplated hereby.

  (c) **Authority; Binding Nature of Agreement**. The Seller has the power to enter into this Agreement and to carry out his obligations hereunder. This Agreement constitutes the valid and binding obligation of the Seller and is enforceable in accordance with its terms.

  (d) **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by the Seller with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

    (i) result in the creation of any Lien upon the Shares;

    (ii) violate any judgment, order, injunction, decree or award against, or binding upon, the Seller;

---

[1] Note to Draft: To confirm no additional reps regarding the company are needed.

        (iii)    violate or otherwise breach the terms of any agreement or understanding, written or oral, to which the Seller is a party or is otherwise bound; or

        (iv)    violate any law or regulation of any jurisdiction relating to the Seller.

4.    **Representations of Buyer**. The Buyer represents and warrants to the Seller as follows (the Buyer acknowledging and agreeing that the following representations and warranties are a material inducement to the Seller's entering into this Agreement):

    (a)    **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Buyer to enable him to enter into and carry out this Agreement and the transactions contemplated hereby.

    (b)    **Authority; Binding Nature of Agreement**. The Buyer has the power to enter into this Agreement and to carry out his obligations hereunder. This Agreement constitutes the valid and binding obligation of the Buyer and is enforceable in accordance with its terms.

    (c)    **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by the Buyer with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

        (i)    violate any judgment, order, injunction, decree or award against, or binding upon, the Buyer;

        (ii)    violate or otherwise breach the terms of any agreement or understanding, written or oral, to which the Buyer is a party or is otherwise bound; or

        (iii)    violate any law or regulation of any jurisdiction relating to the Buyer.

5.    **Representations of Company**. The Company represents and warrants to the Buyer and the Seller that the sale and purchase of the common stock of the Company is duly authorized by the Certificate of Incorporation and By-Laws of the Company.

6.    **Survival of Representations**. The representations and warranties of the Seller, the Buyer and the Company contained in this Agreement shall survive the execution and delivery hereof.

7.    **Ownership**. The parties hereto acknowledge and agree that, following the consummation of the transactions contemplated hereby, the Buyer shall own ninety-nine percent (99%) of the issued and outstanding shares of capital stock of the Company, and the Seller shall now own one percent (1%) of the outstanding shares of capital stock of the Company.

8.    **Amendment**. Neither this Agreement nor any term or provision hereof may be changed, waived, discharged, or terminated orally, or in any manner other than by an instrument

in writing signed by the party against whom the enforcement of the change, waiver, discharge, or termination is sought.

9. **Tax Returns.** The parties agree that the Company's Federal and New York State income tax returns for 2017 shall not be filed without the prior written consent of both parties, which consent shall not be unreasonably withheld, conditioned or delayed. The Company shall furnish to the Seller a draft of each such return, no less than thirty (30) days prior to the date of the filing of the return, for his review and approval.

10. **Releases**.

(a) Release of the Company and the Buyer. The Seller hereby releases and forever discharges the Company, the Buyer and their respective officers, directors, heirs and legal representatives (collectively, the "Company/Buyer Releasees") from any and all actions, causes of action, claims, suits, demands, debts, dues, sums of money, accounts, compensation, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, attorneys' fees, costs, expenses, judgments, extents, and executions whatsoever, at law or in equity, that the Seller has or may at any time have against or with respect to the Company/Buyer Releasees by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to the Company; provided, however, that the foregoing shall not be a limitation on the rights of the Seller under and pursuant to this Agreement and the documents executed in connection herewith.

(b) Release of the Seller by the Company and the Buyer. The Company and the Buyer hereby release and forever discharge the Seller and his heirs and legal representatives (collectively, the "Seller Releasees") from any and all actions, causes of action, claims, suits, demands, debts, dues, sums of money, accounts, compensation, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, attorneys' fees, costs, expenses, judgments, extents, and executions whatsoever, at law or in equity, that the Company and/or the Buyer have or may at any time have against or with respect to the Seller Releasees by reason of any matter, cause of action or thing whatsoever from the beginning of time to the date hereof relating to the Company; provided, however, that the foregoing shall not be a limitation on the rights of the Buyer under and pursuant to this Agreement and the documents executed in connection herewith.

11. **Indemnification**.

(a) Indemnification. The Buyer agrees to indemnify the Seller and his heirs and legal representatives (collectively, the "Seller Indemnitees") against, and hold the Seller Indemnitees harmless from and against, all third-party losses, liabilities, costs and expenses, including reasonable attorneys' fees, which, directly or indirectly, relate to or arise out of the business or operations of the Company arising after the Closing, including with respect to the Company's line of credit and any personal guaranty given by the Seller. The Seller agrees to indemnify the Buyer and his heirs and legal representatives (collectively, the "Buyer Indemnitees", and together with the Seller Indemnitees, the "Indemnitees") against, and hold the Buyer Indemnitees harmless from and against, all third-party losses, liabilities, costs and expenses, including reasonable attorneys' fees, which, directly or indirectly, relate to or arise out of the Buyer's ownership of the Company prior to the Closing.

(b) <u>Procedure</u>. At the request of an Indemnitee, the Buyer or the Seller, as applicable (the "Indemnifying Party"), shall, at his sole cost and expense, assume the control of the defense, settlement or compromise of any third party claim against the Indemnitee, with counsel that is reasonably satisfactory to the Indemnitee. In the event that the Indemnifying Party assumes the defense of any claim, (i) he shall not, without the prior written consent of the Indemnitee, consent to the entry of any judgment against the Indemnitee or enter into any settlement or compromise of the claim which does not include, as an unconditional term thereof (i.e., there being no requirement that the Indemnitee pay any amount of money or give any other consideration), the giving by the claimant or plaintiff to the Indemnitee of a release, in form and substance satisfactory to the Indemnitee, from all liability in respect of the claim, and (ii) if the Indemnitee desires to participate in, but not control, any such defense or settlement, he may do so at his sole cost and expense. If the Indemnitee should elect to defend a claim, (i) he shall not, without the prior written consent of the Buyer (not to be unreasonably withheld or delayed), consent to the entry of any judgment against the Indemnitee or enter into any settlement or compromise of the claim, and (iii) the Indemnifying Party shall have the right to participate in, but not control, the defense or settlement of such claim at their sole cost and expense.

12. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the respective parties and their successors, assigns, heirs and personal representatives.

13. **Counterparts; Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. Signatures transmitted herein via facsimile or other electronic image shall be deemed original signatures.

14. **Entire Agreement**. This Agreement constitutes the entire understanding between the parties with respect to its subject matter and supersedes any previous written or oral agreement with respect thereto. The parties hereto acknowledge and agree that no review, examination or investigation made by any of the parties or their respective representatives shall limit or affect any representation or warranty made by any of the parties in, or otherwise relieve any of the parties from any liability under, this Agreement.

15. **Governing Law**. This Agreement is made under and shall be construed in accordance with the laws of the State of New York, excluding choice of law principles thereof.

16. **Notices**. Any and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement shall be deemed to have been duly given or made for all purposes when hand delivered or sent by certified or registered mail (return receipt requested and postage prepaid), Federal Express or courier as follows:

If to the Seller, at:

Sami Omar
2747 Paradise Road, Unit 3103
Las Vegas, NV 89109

If to the Buyer, at:

Sharif Omar
430 East 86th Street, Apt. 15F
New York, New York 10028

If to the Company, at:

c/o Certilman Balin Adler& Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Attention: Brendan J. DeRiggi, Esq.

or at such other address as any party may specify by notice given to the other party in accordance with this Section 16.

17. **Representation by Counsel; Interpretation.** Each party acknowledges that he or it has been represented by counsel, or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived by the parties. The provisions of this Agreement shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

18. **Construction**. The headings or captions in this Agreement are for convenience of reference only and do not in any way modify, interpret or construe the intent of the parties or affect any of the provisions of this Agreement. Words and phrases used herein in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender, unless the context requires otherwise. The words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation".

19. **Further Assurances**. Following the Closing, each of the parties hereto shall, and shall cause their respective affiliates to, execute and deliver such additional documents, instruments, conveyances and assurances, and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

20. **Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. Signatures hereon which are transmitted via facsimile or other electronic image (e.g. PDF) shall be deemed original signatures.

**[Remainder of page intentionally left blank. Signature page follows.]**

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**SELLER:**

_____
Sami Omar

**BUYER:**

_____
Sharif Omar

**COMPANY:**

**LIPTIS PHARMACEUTICALS USA, INC.**

By: _____

By: _____