# EXHIBIT C

STOCK PURCHASE AGREEMENT, made as of the 1st day of April, 2017 (the "Effective Date"), by and between **SAMI OMAR** (the "Seller") and **SHARIF OMAR** (the "Buyer").

## RECITALS

**WHEREAS**, **NEW LIFE HOLDING CORP.**, is a corporation duly formed and existing pursuant to the laws of the State of New York (the "Company"), with two hundred (200) outstanding shares of common stock;

**WHEREAS**, the Seller is the owner of sixty six and three-fifths (66.6) shares of the common stock of the Company, which represents thirty three and one-third (33.3%) percent of the issued and outstanding common stock of the Company;

**WHEREAS**, the Buyer is the owner of sixty six and three-fifths (66.6) shares of the common stock of the Company, which represents thirty three and one-third (33.3%) percent of the issued and outstanding common stock of the Company;

**WHEREAS**, the Seller desires to sell, and the Buyer desires to buy, sixty four and three-fifths (64.6) of the shares subject to the terms and conditions set forth herein (the "Shares").

**NOW, THEREFORE**, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1. **Sale of Shares**. For and in consideration of the Purchase Price (as hereinafter defined), effective as of 12:00 a.m. on the Effective Date, the Seller hereby sells and assigns the Shares to the Buyer, and the Buyer hereby purchases the Shares from the Seller.

    (a)  The consideration for the Shares is the aggregate sum of Six Million Four Hundred Twenty Five Thousand Dollars ($6,425,000.00) (the "Purchase Price"), payable in accordance with the terms set forth herein.

    (b)  Simultaneous with the execution and delivery of this Agreement, the Company shall redeem the shares from the Seller and simultaneously reissue the shares to the Buyer in exchange for the Company's initial payment in the sum of Six Million Two Hundred Fifty Thousand Dollars ($6,250,000.00), (the "Initial Payment"). The balance of the Purchase Price in the sum of One Hundred Seventy Five Thousand Dollars ($175,000.00) shall be due and payable to Seller upon the earlier of the following: (i) two years from the date of this Agreement; or (ii) upon sale of the premises located at 2162-2172 Third Avenue, New York, New York. The Initial Payment shall be funded from a portion of the proceeds from a certain loan by BankUnited, N.A. to the Company.

2. **Representations of Seller**. The Seller represents and warrants to the Buyer as follows (the Seller acknowledges and agrees that the following representations and warranties are a material inducement to the Buyer's entering into this Agreement):

(a) **Ownership of Shares**. The Seller is the sole record and beneficial owner of the Shares, free and clear of all liens, pledges, security interests, encumbrances, restrictions, subscriptions, hypothecations, charges and claims of any kind whatsoever (collectively, "Liens"). The Seller has the absolute and unqualified right to transfer the Shares to the Buyer pursuant to the terms of this Agreement. Seller agrees to retain ownership of his remaining two (2) shares of the Company's common stock until such time as a certain loan from BankUnited, N.A. to the Company in the original principal sum of $9,750,000.00 has been paid in full.

(b) **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Seller to enable it to enter into and carry out this Agreement and the transactions contemplated hereby.

(c) **Authority; Binding Nature of Agreement**. The Seller has the power to enter into this Agreement and to carry out its obligations hereunder. This Agreement constitutes the valid and binding obligation of the Seller and is enforceable in accordance with its terms.

(d) **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by the Seller with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

(i) result in the creation of any Lien upon the Shares;

(ii) violate any judgment, order, injunction, decree or award against, or binding upon, the Seller;

(iii) violate or otherwise breach the terms of any agreement or understanding, written or oral, to which the Seller is a party or is otherwise bound; or

(iv) violate any law or regulation of any jurisdiction relating to the Seller.

3. **Representations of Buyer**. The Buyer represents and warrants to the Seller as follows (the Buyer acknowledging and agreeing that the following representations and warranties are a material inducement to the Seller's entering into this Agreement):

(a) **Consents**. No consent of any governmental or other regulatory agency, or of any other person or entity, is required to be received by or on the part of the Buyer to enable him to enter into and carry out this Agreement and the transactions contemplated hereby.

(b) **Authority; Binding Nature of Agreement**. The Buyer has the power to enter into this Agreement and to carry out his obligations hereunder. This Agreement constitutes the valid and binding obligation of the Buyer and is enforceable in accordance with its terms.

2

(c) **No Breach**. Neither the execution and delivery of this Agreement, nor compliance by the Buyer with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

(i) violate any judgment, order, injunction, decree or award against, or binding upon, the Buyer;

(ii) violate or otherwise breach the terms of any agreement or understanding, written or oral, to which the Buyer is a party or is otherwise bound; or

(iii) violate any law or regulation of any jurisdiction relating to the Buyer.

4. **Representations of Company.** The Company represents and warrants to the Buyer and Seller that the sale and purchase of the common stock of the Company is duly authorized by the Certificate of Incorporation and By-Laws of the Company.

5. **Survival of Representations**. The representations and warranties of the Seller, Buyer and Company contained in this Agreement shall survive the execution and delivery hereof.

6. **Amendment**. Neither this Agreement nor any term or provision hereof may be changed, waived, discharged, or terminated orally, or in any manner other than by an instrument in writing signed by the party against whom the enforcement of the change, waiver, discharge, or termination is sought.

7. **Tax Returns.** The parties agree that the Company's Federal and New York State income tax returns for 2016 shall not be filed without the prior written consent of both parties. The Company shall furnish to the Seller a draft of each such return, no less than thirty (30) days prior to the date of the filing of the return, for his review and approval.

8. **Releases**.

(a) Release of the Company and the Buyer. The Seller hereby releases and forever discharges the Company, the Buyer and their respective officers, directors, heirs and legal representatives (collectively, the "Company/Buyer Releasees") from any and all actions, causes of action, claims, suits, demands, debts, dues, sums of money, accounts, compensation, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, attorneys' fees, costs, expenses, judgments, extents, and executions whatsoever, at law or in equity, that the Seller has or may at any time have against or with respect to the Company/Buyer Releasees by reason of any matter, cause or thing whatsoever from the beginning of time to the date hereof relating to the Company; provided, however, that the foregoing shall not be a limitation on the rights of the Seller under and pursuant to this Agreement and the documents executed in connection herewith.

(b) Release of the Seller by the Company and the Buyer. The Company and the Buyer hereby release and forever discharge the Seller and his heirs and legal representatives (collectively, the "Seller Releasees") from any and all actions, causes of action, claims, suits,

3

demands, debts, dues, sums of money, accounts, compensation, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, attorneys' fees, costs, expenses, judgments, extents, and executions whatsoever, at law or in equity, that the Company and/or the Buyer have or may at any time have against or with respect to the Seller Releasees by reason of any matter, cause of action or thing whatsoever from the beginning of time to the date hereof relating to the Company; provided, however, that the foregoing shall not be a limitation on the rights of the Buyer under and pursuant to this Agreement and the documents executed in connection herewith.

9. **Indemnification**.

(a) <u>Indemnification</u>. The Company and the Buyer agree, jointly and severally, to indemnify the Seller and his heirs and legal representatives (collectively, the "Indemnitees") against, and hold the Indemnitees harmless from and against, all losses, liabilities, costs and expenses, including reasonable attorneys fees, which, directly or indirectly, relate to or arise out of the business or operations of the Company, whether before or after the Effective Date, including with respect to the Company's line of credit and any personal guaranty given by the Seller.

(b) <u>Procedure</u>. At the request of the Indemnitee, the Company and the Buyer shall, at their sole cost and expense, assume the control of the defense, settlement or compromise of any third party claim against the Indemnitee, with counsel that is reasonably satisfactory to the Indemnitee. In the event that the Company and the Buyer assume the defense of any claim, (i) they shall not, without the prior written consent of the Indemnitee, consent to the entry of any judgment against the Indemnitee or enter into any settlement or compromise of the claim which does not include, as an unconditional term thereof (i.e., there being no requirement that the Indemnitee pay any amount of money or give any other consideration), the giving by the claimant or plaintiff to the Indemnitee of a release, in form and substance satisfactory to the Indemnitee, from all liability in respect of the claim, and (ii) if the Indemnitee desires to participate in, but not control, any such defense or settlement, he may do so at his sole cost and expense. If the Indemnitee should elect to defend a claim, (i) he shall not, without the prior written consent of the Buyer (not to be unreasonably withheld or delayed), consent to the entry of any judgment against the Indemnitee or enter into any settlement or compromise of the claim, and (iii) the Company and the Buyer shall have the right to participate in, but not control, the defense or settlement of such claim at their sole cost and expense.

10. **Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the respective parties and their successors, assigns, heirs and personal representatives.

11. **Counterparts; Signatures**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original. Signatures transmitted herein via facsimile or other electronic image shall be deemed original signatures.

12. **Entire Agreement**. This Agreement constitutes the entire understanding between the parties with respect to its subject matter and supersedes any previous written or oral agreement with respect thereto. The parties hereto acknowledge and agree that no review, examination or investigation made by any of the parties or their respective representatives shall

4

limit or affect any representation or warranty made by any of the parties in, or otherwise relieve any of the parties from any liability under, this Agreement.

13. **Governing Law**. This Agreement is made under and shall be construed in accordance with the laws of the State of New York, excluding choice of law principles thereof.

14. **Notices**. Any and all notices or other communications or deliveries required or permitted to be given or made pursuant to any of the provisions of this Agreement shall be deemed to have been duly given or made for all purposes when hand delivered or sent by certified or registered mail (return receipt requested and postage prepaid), Federal Express or courier as follows:

If to the Seller, at:

Sami Omar
2747 Paradise Road, Unit 3103
Las Vegas, NV 89109

If to the Buyer, at:

Sharif Omar
430 East 86th Street, Apt. 15F
New York, New York 10028

If to the Company, at:

c/o Certilman Balin Adler& Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Attention: Brendan J. DeRiggi, Esq.

or at such other address as any party may specify by notice given to the other party in accordance with this Section 13.

15. **Representation by Counsel; Interpretation**. Each party acknowledges that he or it has been represented by counsel, or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived by the parties. The provisions of this Agreement shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

16. **Construction**. The headings or captions in this Agreement are for convenience of reference only and do not in any way modify, interpret or construe the intent of the parties or affect any of the provisions of this Agreement. Words and phrases used herein in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender, unless the context requires otherwise.

**[Remainder of page intentionally left blank. Signature page follows.]**

5

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**SELLER:**

_____
Sami Omar

**BUYER:**

_____
Sharif Omar

**COMPANY:**

NEW LIFE HOLDING CORP.

By:_____
Sharif Omar, President

By:_____
Sami Omar, Vice President