UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

SAMI OMAR,

                              Plaintiff,

              -against-                                    **24-cv-4758 (MMG)**

SHARIF OMAR, LIPTIS HOLDINGS LLC, LIPTIS
PHARMACEUTICALS USA, INC., OMAR HOLDING CORP.,
and NEW LIFE HOLDING CORP.,

                              Defendants.

----------------------------------------------------------------------------x

**MEMORANDUM OF LAW OF DEFENDANTS OMAR HOLDING CORP. AND NEW
LIFE HOLDING CORP. IN SUPPORT OF MOTION TO DISMISS COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Respectfully submitted by:

**WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN LLP**
Philip J. Campisi, Jr., Esq.
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
*Attorneys for Defendants Omar
Holding Corp. and New Life Holding Corp.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................ii

PRELIMINARY STATEMENT.......................................................................................... 1

RELEVANT FACTUAL BACKGROUND ....................................................................... 2

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

> POINT I      No Privity of Contract Exists Between Sami and New Life and OHC,
> Requiring That All Claims Against Each Must Be Dismissed ................. 8

> POINT II     The Action Is Barred By The Release ........................................................ 9

> POINT III    The Claims Against OHC and New Life Must Also Be
> Dismissed For Several Other Independent Reasons ................................11

>> A.     Any Claim Relating to The 2017 New Life Agreement
>> Are Barred By The Statue Of Limitations ..................................11

>> B.     The OHC Stock Purchase Agreement is Valid and Binding .................... 12

>> C.     The OHC and New Life Agreements On Their Face Demonstrate
>> That There Was No Oral Promise Of A Reciprocal Release.................... 12

>> D.     The Doctrine Of Laches Warrants Dismissal Of This Action.................. 14

>> E.     Sami Was Required To Bring These Claims As Compulsory
>> Counterclaims ............................................................................ 16

>> F.     Sami's Third and Fourth Causes of Action Should Also Be Dismissed ... 17

CONCLUSION.................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Jacobs,*
  950 F.2d 89 (2d Cir. 1991) ................................................................................................. 16

*Andy Stroud, Inc. v. Brown,*
  2009 WL 539863 (S.D.N.Y. Mar. 4, 2009) ........................................................................ 16

*Appel v. Ford Motor Co.,*
  111 A.D.2d 731 (2d Dep't 1985) ........................................................................................ 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................................. 7

*Ballow Brasted O'Brien & Rusin P.C. v. Logan,*
  435 F3d 235 (2d Cir. 2006) ............................................................................................... 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................................. 7

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,*
  757 F.2d 523 (2d Cir. 1985) .............................................................................................. 10

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ................................................................................................ 8

*Continental Cas. Co. v. Marshall Granger & Co.,* LLP,
  6 F. Supp. 3d 380 (S.D.N.Y. 2014) ................................................................................... 15

*Curcio v. Hartford Fin. Servs. Group,*
  472 F. Supp. 2d 239 (D. Conn. 2007) ............................................................................... 16

*Garcia v. United States,*
  2019 WL 719198 (S.D.N.Y. Feb. 20, 2019) ..................................................................... 16

*Gasperini v. Center for Humanities, Inc.,*
  518 U.S. 415 (1996) ............................................................................................................. 7

*Grymes v. Sanders,*
  93 U.S. 55 (1876) ............................................................................................................... 15

*International Bus. Machs. Corp. v. Simon,*
  376 F. Supp. 3d 292 (S.D.N.Y. 2019) ............................................................................... 10

*Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ......................................................................................... 8

*Israel v. Chabra*,
  12 N.Y.3d 158 (2009) ............................................................................................. 14

*Mallis v. Bankers Trust Co.*,
  615 F.2d 68 (2d Cir.1980) ......................................................................................... 8

*New York Islanders Hockey v. Comerica Bank-Texas*,
  71 F. Supp. 2d 108 (E.D.N.Y. 1999) ......................................................................... 8

*NML Capital v. Republic of Argentina*,
  621 F.3d 230 (2d Cir. 2010) .................................................................................... 18

*Papasan v. Allain*,
  478 U.S. 265 (1986) ................................................................................................... 7

*Republic of Turkey v. Christie's Inc.*,
  62 F.4th 64 (2d Cir. 2023) ....................................................................................... 15

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
  380 F.3d 704 (2d Cir. 2004) .................................................................................... 12

*Roberts v. Plottel*,
  1996 WL 306570 (S.D.N.Y.1996) ........................................................................... 11

*Seaver v. Ransom*,
  224 N.Y. 233, 120 N.E. 639 (1918) ........................................................................... 8

*Smith v. Caterpillar, Inc.*,
  338 F.3d 730 (7th Cir. 2003) ................................................................................... 15

*Spectrum Painting Contrs., Inc. v. Kreisler Borg Florman Gen. Constr. Co.,* Inc.,
  64 A.D.3d 565 (2d Dept. 2009) ............................................................................... 17

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*,
  132 A.D.2d 604, 517 N.Y.S.2d 764 (2d Dept. 1987) .............................................. 17

*Thailer v. LaRocca*,
  174 A.D.2d 731, 571 N.Y.S.2d 569 .......................................................................... 10

*United States ex rel. Camburn v. Novartis Pharma. Corp.*,
  124 F.4th 129 (2d Cir. 2024) ..................................................................................... 7

*United States ex rel. Chorches for Bankr. Est. of Fabula v. American Med. Response, Inc.*,
  858 F.3d 71 (2d Cir. 2017) ......................................................................................... 7

*United States v. Martinez*,
   151 F.3d 68 (2d Cir. 1988) ................................................................................ 18

*White v. Guarente*,
   43 N.Y.2d 356 (1977) ...................................................................................... 8

**Statutes**

N.Y. Gen Oblig. Law § 15-301(1) ...................................................................... 14

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................ 7
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ...................................... 1, 7, 8
FRCP 13(a) .................................................................................................. 1, 2, 16
N.Y. Civ. Prac. L. & R. § 213(2) ...................................................................... 11

Defendants Omar Holding Corp. ("OHC") and New Life Holding Corp. ("New Life" and collectively with OHC, the "Moving Defendants"), by and through their counsel, hereby file this Memorandum of Law in Support of the present motion to dismiss the above-caption action as against the Moving Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), because *inter alia*: [1] there is a lack of privity between Plaintiff Sami Omar ("Plaintiff" or "Sami") and OHC and New Life;  [2] a valid Release bars all claims; [3] Sami received consideration for all stock purchase agreements and Release; [4] laches defeats all claims; [5] the claims in the Complaint should have been asserted as compulsory counterclaims in a prior related action pursuant to FRCP 13(a); and [6] unconscionability is not present ("the Motion").

## PRELIMINARY STATEMENT

Plaintiff Sami Omar ("Plaintiff") filed this action seeking recission of various agreements he executed in 2018, nearly 6 years prior to the filing of his Complaint (ECF Doc. No. 1). As analyzed below, the claims as against OHC and New Life all fail as a matter of law for several independent reasons, including, but not limited to:

- First and most notably, <u>neither OHC nor New Life are parties to any of the stock purchase agreements which Sami seeks to rescind</u>.  Neither OHC nor New Life had any rights or obligations under these agreements, and the First, Second and Third Causes of Action in the Complaint do not seek any relief against OHC or New Life;

- Second, Sami, a sophisticated businessman who was not only a shareholder of OHC, but had run the company, signed a fully enforceable and valid Release (detailed below) *which precludes all of the claims in this action, including those against OHC and New Life*;

- With respect to the Release, Sami's contention that it is not valid because Sharif (not OHC and/or New Life) allegedly made an oral promise to provide a reciprocal release in favor of Sami which was never delivered is belied by the OHC and New Life stock purchase agreements – <u>each of which contain explicit language providing that Sharif and his affiliates (including OHC and New Life) do not waive any claims they may have against Sami and/or his affiliates</u>;

- The causes of action in the Complaint also track almost verbatim the affirmative defenses asserted by Sami sounding in fraud, lack of consideration,

unconscionability and failure to provide a reciprocal release way back in December 2019 in an Answer filed in response to OHC's claims against Sami in the related Promissory Note Action (described more fully below). As a result, the claims brought nearly 6 years in this newly filed action were compulsory counterclaims under FRCP 13(a) and should be dismissed in the Court's discretion, and are also subject to dismissal under the doctrine of laches;

- To the extent any of the causes of action in the Complaint may be deemed to seek rescission of the 2017 agreement between Sami and Sharif in connection with the sale of the approximately 97% of Sami's stock in New Life (retaining 2 shares), any such claims are barred by the statute of limitations; and

- To the extent that Sami claims the Release and other documents were signed under under false pretenses, those claims are barred by the explicit language in the Release and by the fact, as noted above, that Sami was at the time of execution of these documents in 2018 a business owner, executive and sophisticated businessperson.

Simply, there is no basis under the circumstances for the Court to grant relief as against OHC and/or New Life, non-parties to the subject agreements. In addition, to the extent that Sami believes that he has viable defenses to the claims asserted by OHC against him in the Promissory Note Action sounding in fraud, lack of consideration, unconscionability and failure to provide a reciprocal release (although OHC and New Life contend that these are frivolous), Sami will have a full and fair opportunity to assert those defenses without prejudice in that related action. These defenses, however, fundamentally do not stand as affirmative claims against OHC and/or New Life.

For all these reasons and those more fully analyzed below, all causes of action in the Complaint as against OHC and New Life should be dismissed in their entirety with prejudice.

## RELEVANT FACTUAL BACKGROUND

For the Court's convenience, the Moving Defendants provide a summary recitation the factual and procedural background set forth in the Complaint (ECF Doc. No. 1 (the "Complaint")) and drawn from the documentary evidence as relevant to the Motion.

It is alleged that in October 2017, Sharif initiated a meeting with Sami regarding Sami's ownership of shares in the Liptis Entities.  (Compl.. at ¶ 46).  At that time, Sami owned interests of 45% in Liptis Holdings and 45% in Liptis Pharma (*Id.* at ¶ 47).  The balance of each entity was owned by Defendant Sharif Omar.

It is alleged Sharif presented an ultimatum:  either Sami, that day, agreed to sell Sharif the vast majority of his shares for a nominal amount or Sami would be fired by the Liptis Entities, as well as other companies comprising the purported "Family Business".  (*Id.* at ¶ 47-48).

The "Family Business" is defined in the Complaint to include Defendants OHC and New Life.  (*Id.* at ¶ 47-48).

Sami signed written agreements by which he sold his entire ownership stake in the Liptis Entities, except for 1%.  (*Id.* at ¶ 50).  By written agreements dated October 23, 2017, Sami sold to Sharif his 44% interest in Liptis Holdings for $25,000 and his 44% interest in Liptis Pharma for $100,000 and 64.6 of his 66.6 shares (retaining 2 shares) in New Life (the "2017 New Life Agreement").  The 2017 New Life Agreement is annexed to the accompanying Declaration of Philip J. Campisi, Jr., dated March 28, 2025 (the "Campisi Decl.") as Exhibit "C".

In the 2017 New Life Agreement, Sami agreed to sell approximately 97% of his stock ownership interests (64.6 of his 66.6 shares) in New Life.

Further, in the 2017 New Life Agreement, Sami released and discharged New Life and Sharif "from any and all actions, causes of action, claims, suits, demands, debts, dues, sums of money, accounts, compensation, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, attorneys' fees, costs, expenses, judgments, extents, and executions whatsoever, at law or in equity, that the Seller has or may at any time have against or with respect to the Company/Buyer Releasees by reason of any

matter, cause or thing whatsoever from the beginning of time to the date hereof relating to the Company; provided, however, that the foregoing shall not be a limitation on the right of the Seller under and pursuant to this Agreement and the documents executed in connection herewith." *Id*. at 3.

In the 2017 New Life Agreement, the "Seller agree[d] to indemnify the Buyer and his heirs and legal representatives (collectively, the "Buyer Indemnitees"…) against, and hold the Buyer Indemnitees harmless from and against, all third-party losses, liabilities, costs and expenses, including reasonable attorneys' fees, which, directly or indirectly, relate to or arise out of the Buyer's ownership of the Company prior to the Closing." A specific procedure for indemnification was set forth and required to be followed. *Id*. at 4.

In the 2017 New Life Agreement, Sami and Sharif acknowledged that each had "been represented by counsel or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby. Accordingly, any rule of law or any legal decision that would require the interpretation of any claimed ambiguities in this Agreement against the party that drafted it has no application and is expressly waived by the parties. The provisions of this Agreement shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto." *Id*. at 5.

In the 2017 New Life Agreement, Sami and Sharif set forth their entire agreement: "This Agreement constitutes the entire understanding between the parties with respect to its subject matter and supersedes any previous written or oral agreement with respect thereto. The parties hereto acknowledge and agree that no review, examination or investigation made by any of the parties or their respective representatives shall limit or affect any representation or warranty made by any of the parties in, or otherwise relieve any of the parties from any liability under, this

4

Agreement."  Sami and Sharif also limited the ability to amend or modify, agreeing as follows: "Neither this Agreement nor any term of provision hereof may be changed, waived, discharged, or terminated orally, or in any manner other than by an instrument in writing signed by the party against whom the enforcement of the change, waiver, discharge, or termination is sought."  *Id*. at 4-5.

In the Spring of 2018, Sami and Sharif severed their remaining business connections relating to the Family Business.  (Compl. at ¶ 58).  The negotiations culminated on or about June 26, 2018, when Sami signed the Release and Agreements related to the sale of his remaining ownership interests in the Liptis Entities.  (*Id*. at ¶ 62) and his remaining 1% interest (2 shares) in New Life (the "2018 New Life Agreement").[1]

At the same time, on or about June 26, 2018, Sami also entered into an agreement to sell all of his 31.2886270 shares of the Common Stock of OHC for a purchase price of $577,335.00.  This transaction was also memorialized in a signed agreement.  A copy of this agreement (the "OHC Agreement") is attached to the Campisi Decl. as Exhibit "E".

The Release that Sami signed at this time operated to release Sharif, the Family Business (including OHC and New Life), any business related to the Family Business and Sharif's immediate family.   (Compl. at ¶ 59).

The Release is broad, clear and unequivocal.  Campisi Decl. at Exhibit "F".  By signing the Release (the terms of which are further detailed in Argument Point II below), Sami knowingly released all of the Defendants from all of the claims in this action.  Sami does not deny signing the Release.  Instead, he seeks to invalidate it or have the Court now compel a reciprocal release to

---

[1] A copy of the 2018 New Life Agreement is attached as Exhibit "D" to the Campisi Decl.

him based on allegations of a purported oral promise of Sharif to provide such a reciprocal release in 2018.

Notably, the documents signed by Sami on June 26, 2018 did not include a proposed release from Sharif or the other parties released (*i.e.*, a Reciprocal Release). (*Id.* at ¶ 59). Purportedly, Sami called Sharif that day from his home to protest the absence of a Reciprocal Release and to demand that one be delivered. (*Id.* at ¶ 60). Nonetheless, Sami signed the Release and Agreements that day without obtaining any signed writing from Sharif or the parties released that required or obligated any one of them to provide a Reciprocal Release and without demanding a holdback of any deliverables pending the delivery of any purported Reciprocal Release.

Of particular relevance to this Motion and, specifically, to the premise that Sami was purportedly promised a reciprocal Release (the terms of which are described below) by Sharif, Section 15 of the OHC Agreement and Section 14 of the 2018 New Life Agreement state that "[n]othing in this Agreement shall be deemed or constituted a waiver of any rights that the Buyer [Sharif] and/or any of its affiliates [namely, OHC, New Life and the Liptis Entities] may have against the Seller [Sami] and/or any of its affiliates with respect to any to any matter that is not expressly provided for in this Agreement." *Thus, the OHC Agreement and 2018 New Life Agreement not only do not contain any terms requiring or suggesting a reciprocal release to Sami, but those agreements explicitly provide for a reservation of rights for Sharif and his affiliates (including the corporate Defendants here) to bring claims against Sami and/or his affiliates.*

Despite the foregoing, in this action, Sami has sued OHC and New Life, among others, because Sami believes he was cheated out of his ownership interests in the Family Business by these transactions. But, Sami ignores, most prominently, the fact that neither OHC nor New Life are parties to or have any obligations arising out of any of these Agreement. He also ignores the

plain language of the signed Agreements, and the purchase money paid, some of which was acknowledged received as repayment for prior improper personal expenses.

Sami, in any event, asks the Court to ignore his signed writings and/or to interpret them in an unreasonable fashion to deprive the original intent of the parties from being achieved.  As analyzed below, the claims, respectfully, must be dismissed as a matter of law.

## **LEGAL STANDARD**

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 679.  The Court is not required to "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 417 (1996).

A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Evaluating the sufficiency of pleadings under the heightened Rule 9(b) standard, which applies to fraud-based claims, is always a 'context-specific' exercise." *United States ex rel. Camburn v. Novartis Pharma. Corp.*, 124 F.4th 129, 134 (2d Cir. 2024) (citing *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Med. Response, Inc.*, 858 F.3d 71, 81 (2d Cir. 2017)).

While a court generally may not consider documents in adjudicating a motion under Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (citing *Int'l Audiotext Network*, 62 F.3d at 72).

## **ARGUMENT**

## **POINT I**

### **No Privity of Contract Exists Between Sami and New Life and OHC, Requiring That All Claims Against Each Must Be Dismissed**

Under New York law, a longstanding general rule exists that in order to enforce terms of a contract, or bring a breach of contract claim, a plaintiff and defendant must be in privity of contract. *see Seaver v. Ransom*, 224 N.Y. 233, 237, 120 N.E. 639 (1918).[2]  This is common sense.

Here, *Sami and Defendant Sharif are the sole parties to the OHC and New Life stock purchase agreements*.  Neither OHC nor New Life are parties to these agreements.  Neither company has any rights or obligations under these agreements.

---

[2] Additionally, under New York law, a party charged with negligent misrepresentations must have a contractual duty to the other, or there must be some other basis for finding the duty in the context of the parties' dealings. *See, e.g., White v. Guarente*, 43 N.Y.2d 356, 362–363 (1977) (the author of the negligent misrepresentations must be "bound by some relation of duty, arising out of contract or otherwise"); *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980), cert. denied, 449 U.S. 1123 (1981) (same); *New York Islanders Hockey v. Comerica Bank-Texas*, 71 F. Supp. 2d 108,  119 (E.D.N.Y. 1999) (same).  Here, aside from not being parties to the stock purchase agreements, the Complaint does not contain any allegations the any representations were made by OHC or New Life, and the fully integrated agreements, which contain merger clauses, do not provide that OHC or New Life will provide any release in favor of Sami.

As a result of the foregoing, the First, Second, and Third Causes of Action which all seek rescission of the OHC and New Life Stock Purchase Agreements must be dismissed as against OHC and New Life, as must the Fourth Cause of Action as detailed below.[3]  Simply, these are claims which solely seek to rescind agreements which, again, OHC and New Life were not parties to, and these causes of actions seek no relief as against OHC and New Life.

## POINT II

## The Action Is Barred By The Release

Even though OHC and New Life contend that the Court need not go further than the issue of lack of privity as warranting dismissal against OHC and New Life, each of the claims in the Complaint are also subject to summary dismissal as violative of the Release executed by Sami in favor of, among others, OHC and New Life.  Campisi Dec. at Exhibit "F".

The Release explicitly released, among others, all Defendants, including OHC and New Life,  from "all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever , in law, admiralty or equity, which against the [Moving Defendants], or any of them, or any of their respective Affiliates, the Releasor or the Releasor's legal representatives ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of this General Release."  *Id*. at 1.

The Release stated that it "may not be changed orally"; that is "has been executed freely, knowingly and voluntarily by the Releasor without duress, coercion, or undue influence, with a

---

[3] The only allegation in any of the causes of action in the Complaint which can be deemed as seeking relief against OHC and New Life is paragraph 89 of the Fourth Cause of Action, which asks the Court to compel the "family business" to sign and deliver a Reciprocal Release to Sami.  None of the other causes of action seek any relief against OHC and/or New Life.

full understanding of its terms.  The Releasor acknowledges and agrees that, prior to executing this General Release, he has been provided with sufficient time in which to consider this General Release and that, in deciding to execute this General Release, he has relied on his own judgment and further acknowledges that he is fully aware of its contents and of its legal effects." *Id.*

The Release further stated that, "[b]y signing this General Release, the Releasor states that: He has read it; he understands it and knows that he is giving up important rights; he agrees with everything in it; he was told, in writing, to consult an attorney before signing it; and he has signed it knowingly and voluntarily." *Id.*  Notably, the documents signed by Sami on June 26, 2018 (to which OHC and New Life were not even parties) did not include a proposed release from Sharif or the other parties released (*i.e.*, a Reciprocal Release).  And as noted in Point III(C) below, the Agreements even provided a reservation of rights to assert claims against Sami.

"The general rule is that "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties'" *Thaler v. LaRocca*, 174 A.D.2d 731, 733, 571 N.Y.S.2d 569 (2d Dep't 1991 (quoting *Appel v. Ford Motor Co.*, 111 A.D.2d 731, 732 (2d Dep't 1985); *International Bus. Machs. Corp. v. Simon*, 376 F. Supp. 3d 292, 300 (S.D.N.Y. 2019) (holding that New York law a valid release constitutes a complete bar to an action on a claim which is the subject of the release.). A party challenging the release as fraudulently induced must "identify a separate fraud from the subject of the release." *Id.* (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527–28 (2d Cir. 1985).  Here, Sami cannot identify any such fraud perpetrated by Defendants, and certainly not as against OHC or New Life which were not parties to and had no obligations under the subject stock purchase agreements.

10

## POINT III

### The Claims Against OHC and New Life Must Also Be
### Dismissed For Several Other Independent Reasons

Should the Court disagree (respectfully, it should not) and find that dismissal is not appropriate based on New Life and OHC being non-parties to the challenged stock purchase agreements, Plaintiff's claims against the Moving Defendants still fail as a matter of law for several additional reasons.

**A.    Any Claim Relating to The 2017 New Life Agreement**
**Are Barred By The Statue Of Limitations**

As discussed above, Sami and Shariff, as it relates to New Life, entered into two stock purchase agreements, wherein, Sami sold his shares of common stock in New Life to Sharif. In the 2017 New Life Agreement, dated April 1, 2017, Sami agreed to sell 64.6 of his 66.6 shares approximately (97%) of common stock in New Life to Shariff for $6,425,000.00. While it is not clear if the Complaint seeks the relief of rescinding the 2017 New Life Agreement and somehow re-issuing Sami these shares, to the extent it is deemed to seek such relief, the claims would be time-barred. While the Complaint fails to allege that this payment was not tendered and, if it were breached, such breach would necessarily have come at the time the Agreement was entered when the payment was due, in April 2017.

New York applies a six-year statute of limitations to breach of contract claims. N.Y. Civ. Prac. L. & R. § 213(2). For statute of limitations purposes, a cause of action for breach of contract begins to run at the time of breach, even if a plaintiff is unaware of the cause of action at that time. *Roberts v. Plottel*, 1996 WL 306570 (S.D.N.Y.1996). Plaintiff commenced this action by filing his Complaint on June 21, 2024, nearly seven years after he entered into the 2017 New Life Agreement. Accordingly, the statute of limitations has run on any claim relating to this Agreement.

Although the Complaint does not explicitly seek any relief relating to either the 2017 New Life Agreement or 2018 New Life Agreement, this issue is being addressed in an abundance of caution and to make clear that all four causes of action as they may be deemed to relate to the 2017 New Life Agreement must be dismissed.

**B.    The OHC Stock Purchase Agreement is Valid and Binding**

In his First Cause of Action, Sami alleges, *inter alia*, that the OHC Agreement is void due to a lack of consideration. This argument by Plaintiff is completely contradicted by the OHC Agreement itself.  The OHC Agreement clearly provides for the sale of all of Plaintiff's 31.2886270 shares in OHC to Sharif for $577,335.00.  It is further undisputed that Sami received consideration from Sharif in exchange for his shares of common stock in OHC.

Specifically, in Section 1(b) of the OHC Agreement, Sami explicitly acknowledges and agrees that this purchase price was previously paid by Sharif to Sami as a result of Sami's charging an amount equal to the purchase price for personal purposes on a corporate credit card of Liptis Pharmaceuticals USA, Inc., which Sharif became the 100% owner of and was responsible to satisfy on behalf of Sami.  It is well established that it is not the Court's job to evaluate the adequacy of consideration.  "So long as a contract provides some consideration, it may be minimal-even a peppercorn. Courts do not inquire into the value or adequacy of the consideration." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 380 F.3d 704, 709 (2d Cir. 2004).

As a result, Plaintiff's First Cause Action as it relates to the OHC Agreement, must be dismissed.

**C.    The OHC and New Life Agreements On Their Face Demonstrate That There Was No Oral Promise Of A Reciprocal Release**

The Complaint alleges a broken promise by Sharif to deliver a reciprocal Release in return for the Release signed by Sami on June 26, 2024 (Exhibit "F" to the Campisi Decl.) but does not

allege that OHC or New Life made any such purported promise or that Sharif entered into any alleged oral agreement on behalf of either OHC or New Life.

Additionally, the plain language of the OHC and New Life agreements by their very terms indisputably disprove Sami's allegations that a reciprocal release was promised as material consideration for these transactions. The OHC Agreement at Section 15 (Exhibit "E") and 2018 New Life Stock Agreement at Section 14 (Exhibit "D") each state:

> Nothing in this Agreement shall be deemed or constitute a waiver of any rights that the Buyer [Sharif] and/or any of his affiliates may have against the Seller [Sami] and/or any of his affiliates with respect to any matter that is not expressly provided for in this Agreement.

As such, the plain language of the agreements expressly reserves all rights Sharif, as Buyer, and/or any of his affiliates (namely, OHC, New Life and the Liptis Entities) have or may against Sami and/or any of his affiliates.  Respectfully, it would defy logic and reason to carve out this language in both agreements if there was an expected reciprocal general release to be provided in favor of Sami with or shortly after the execution of the agreements.

Moreover, Sami, by executing the agreements, expressly acknowledged that he was represented by counsel, or had the opportunity to be represented by counsel, in connection with the agreements. Specifically, each of the agreements further state at Section 12 (OHC Agreement) and Section 11 (2018 New Life Agreement) that:

> Each party acknowledges that he has been represented by counsel, or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby.

In addition, as noted above, each of these Agreements (Section 9 of the OHC Agreement and Section 10 of the 2018 New Life Agreement) provide that they are fully integrated and

represent the complete understanding of the parties.  Putting aside that OHC and New Life are not even parties to these Agreements, they certainly cannot be somehow imputed to have taken on any oral obligation to provide a reciprocal Release to Sami.  *See* N.Y. Gen Oblig. Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."); *Israel v. Chabra*, 12 N.Y.3d 158, 167 (2009) ("[I]f parties decide to include a 'no oral modification clause in their agreement, the statute is intended to facilitate its enforcement.").

Only now, six years later, does Sami seemingly contend that he was purportedly unsophisticated and did not understand the terms of the contracts he signed.[4]

**D.    The Doctrine Of Laches Warrants Dismissal Of This Action**

It is undisputed that Sami was necessarily aware of the basis of each of the claims asserted in the Complaint for at least 6 years.  In fact, in the related case before Your Honor entitled *Omar Holding Corp. v. Sami Omar*, Case No. 19-cv-06360 (the "Promissory Note Action"), Sami interposed an answer to OHC's complaint in or about December 2019 which asserted affirmative defenses which basically track the causes of action in this newly filed Complaint – namely, fraud, duress, unconscionability and lack of consideration.[5]  While, as detailed below, dismissal is appropriate in the Court's discretion because these claims were compulsory counterclaims in the previously filed Promissory Note action, the claims shall also be dismissed based on doctrine of laches.

---

[4] It should also be noted that the 2017 New Life agreement (pursuant to which Sami sold approximately 97% of his stock in New Life) contained mutual releases between Sami and Sharif.

[5] The court may take judicial notice of Sami Omar's answer in the related Promissory Note action at ECF Doc. No. 37 in that action

Laches is an equitable defense that applies when a plaintiff's unreasonable delay in bringing a claim prejudices the defendant. *Republic of Turkey v. Christie's Inc.*, 62 F.4th 64, 71 (2d Cir. 2023). It is "[e]ssentially the equitable substitute for a statute of limitations." *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003). It is now well established that "[w]here a party desires to rescind upon the ground of . . . fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it . . . . He is not permitted to play fast and loose." *Continental Cas. Co. v. Marshall Granger & Co.*, LLP, 6 F. Supp. 3d 380, 394 (S.D.N.Y. 2014) (first and third alteration in original) (*quoting Grymes v. Sanders*, 93 U.S. 55, 62 (1876)). "New York law requires a party seeking recission of a contract to act without unreasonable delay upon learning of the ground for recission." *Id.* (*citing Ballow Brasted O'Brien & Rusin P.C. v. Logan*, 435 F3d 235, 239–40 (2d Cir. 2006)).

Here, Sami signed the initial agreements in 2017 and the Agreements and Release which he seeks to rescind on June 26, 2018, just five days shy of six years from the filing of the Complaint in this action. Sami's failure to promptly seek the Reciprocal Release constitutes ratification of the terms of the Release and Agreements, particularly where the relief sought is recission. As noted above, OHC commenced its related action against Sami on July 9, 2019, to enforce the terms of Sami's Promissory Note. *See* Compl., *Omar Holding Corp. v. Omar*, Case No. 1:19-cv-06360-MMG (S.D.N.Y. July 9, 2019), ECF Doc. No. 1. Sami, by this time, had to have realized that he had not received a reciprocal release and there were issues with the alleged verbal agreement between him and Sharif. To be sure, Sami filed an answer (the "Answer") to OHC's complaint. *See* Case No. 1:19-cv-06360-MMG (S.D.N.Y. July 9, 2019), ECF Doc. No. 37. In that Answer, Sami raised affirmative defenses that almost verbatim track his causes of action in this action: (i)

fraud; (ii) fraudulent inducement; (iii) lack of consideration; (iv) unconscionability; and (v) undue influence.

Thus, Sami knew of the Defendants' alleged fraud at the time he allegedly was supposed to receive a reciprocal release but did not in June 2018 and then was even made a party to a lawsuit in this Court in 2019 which implicated the supposed reciprocal Release and the transactions described in the Complaint, yet, for reasons unknown, waited another 5 years to commence the instant action. Such delay is fatal to Sami's claims.

**E.    Sami Was Required To Bring These Claims As Compulsory Counterclaims**

Under FRCP 13(a) and relevant Second Circuit precedent, any claims Sami believed he had regarding these transactions at issue in the Complaint should have been brought in 2019 as compulsory counterclaims to the Promissory Note Action. *See Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (instructing the district court to dismiss the action) ("Moreover, under Second Circuit case law, claims for rescission and enforcement arise out of the same transaction or occurrence. . . . We thus conclude that the action before us necessarily constitutes a compulsory counterclaim").

Failure to file a compulsory counterclaim provides the Court with broad discretion which includes the dismissal of the subsequently filed Action. "As an additional reason for dismissal, the Government argues this case concerns the same *res* as the previous Foreclosure Action which this Court has already adjudicated. The 'prior pending action doctrine,' as applicable here, provides that courts must avoid duplicative litigation between the same parties addressing the same issues." *See Andy Stroud, Inc. v. Brown*, 08 Civ. 8246 (HB), 2009 WL 539863, at *34 (S.D.N.Y. Mar. 4, 2009) (quoting *Curcio v. Hartford Fin. Servs. Group*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007); *see also Garcia v. United States*, 2019 WL 719198, at *5 (S.D.N.Y. Feb. 20, 2019) ("[A] court may dismiss an action when a prior pending action has been filed as long as the controlling issues in

the dismissed action will be determined in the other lawsuit."). Respectfully, it is submitted that a dismissal is an appropriate remedy here.

This is particularly true in light of the fact that the claims in the newly filed action do not seek relief against OHC and New Life, which, as detailed above, were not parties to the Stock Purchase Agreements pursuant to which promises were allegedly made as part of those transactions to provide a release. As a result, Sami will not be prejudiced by the dismissal of the claims in the Complaint as against OHC and New Life because he will still retain his identical affirmative defenses to the claims against him in the prior Promissory Note Action.

**F.    Sami's Third and Fourth Causes of Action Should Also Be Dismissed**

Plaintiff's Third and Fourth Causes of Action sounding in Unconscionability and Breach of Contract, respectively, fail for the same reasons analyzed above. As noted above, it is undisputed in New York that "[g]enerally, a party may not assert a cause of action for breach of contract against a person or entity with whom it is not in privity." *Spectrum Painting Contrs., Inc. v. Kreisler Borg Florman Gen. Constr. Co.,* Inc., 64 A.D.3d 565, 576 (2d Dept. 2009). As neither Moving Defendant was a party to the agreements which Plaintiff's claims arise from, they cannot be bound to the terms therein or any purported oral agreement related to those agreements. As a result, breaching those terms is an impossibility and the Court cannot, respectfully, order relief on the Fourth Cause of Action for Breach of Contract against either OHC or New Life.

With respect to the Third Cause of Action sounding in Unconscionability, as analyzed above, this cause of action does not seek relief against OHC and/or New Life; however, it would still fail because "the doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery." *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 606, 517 N.Y.S.2d 764 (2d Dept. 1987). Plaintiff improperly seeks to proactively

void contracts, to which New Life and OHC are not parties.[6]  Simply, there is no relief that can be issued against either.    And again, Sami will retain his defense of unconscionability in the Promissory Note Action.

## **CONCLUSION**

For all of these reasons, Defendants OHC and New Life respectfully request that this Court grant this Motion, enter an Order dismissing this action as against each in its entirety and with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
       March 28, 2025

                         Respectfully submitted,

                         WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN
                         *Attorneys for Defendants Omar Holding Corp. and New Life Holding Corp.*
                         1201 RXR Plaza
                         Uniondale, New York 11556
                         (516) 622-9200

                         By:     /s/ *Philip Campisi*
                                     Philip J. Campisi, Jr., Esq.

---

[6] Even if OHC and New Life were parties to these agreements, unconscionability is meant to protect unsophisticated parties, not business owners and executives on equal playing fields such as Sami and Sharif.  Compl. at ¶¶ 14, 17 and 21.  "The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (citing *United States v. Martinez*, 151 F.3d 68, 74 (2d Cir. 1988)).