UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

SAMI OMAR,

                        Plaintiff,

             -against-                          24-cv-4758 (MMG)

SHARIF OMAR, LIPTIS HOLDINGS LLC, LIPTIS
PHARMACEUTICALS USA, INC., OMAR HOLDING CORP.,
and NEW LIFE HOLDING CORP.,

                        Defendants.

-----------------------------------------------------------------------x

# MEMORANDUM OF LAW OF DEFENDANTS OMAR HOLDING CORP. AND NEW LIFE HOLDING CORP. IN FURTHER SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Respectfully submitted by:

**WESTERMAN BALL EDERER MILLER ZUCKER & SHARFSTEIN LLP**
Philip J. Campisi, Jr., Esq.
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
*Attorneys for Defendants Omar Holding Corp. and New Life Holding Corp.*

**TABLE OF CONTENTS**

**Page No.**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    POINT I      NO PRIVITY OF CONTRACT EXISTS BETWEEN SAMI AND NEW LIFE AND OHC, REQUIRING THAT ALL CLAIMS AGAINST EACH MUST BE DISMISSED ............................... 3

    POINT II     THE ACTION IS BARRED BY THE RELEASE ..................................... 4

    POINT III    THE EXPLICIT TERMS OF THE OHC AND NEW LIFE AGREEMENTS DEFINITIVELY DEMONSTRATE THAT THERE WAS NEVER ANY ORAL PROMISE OF A RECIPROCAL RELEASE ............................................................................ 6

    POINT IV    THE OHC STOCK PURCHASE AGREEMENT IS VALID AND BINDING ................................................................................................ 8

    POINT V     SAMI'S THIRD AND FOURTH CAUSES OF ACTION LACK MERIT AND SHOULD ALSO BE DISMISSED ......................... 9

    POINT VI    TO THE EXTENT THAT ANY OF PLAINTIFF'S CLAIMS RELATE TO THE 2017 NEW LIFE AGREEMENT, THEY ARE BARRED BY THE STATUTE OF LIMITATIONS ........................ 10

    POINT VII   SAMI WAS REQUIRED TO BRING THESE CLAIMS AS COMPULSORY COUNTERCLAIMS ............................................. 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page No.**

*Adam v. Jacobs*,
   950 F.2d 89 (2d Cir. 1991) .................................................................................................. 10

*Andy Stroud, Inc. v. Brown*,
   2009 WL 539863 (S.D.N.Y. Mar. 4, 2009) ............................................................................ 11

*BH 336 Partners LLC v. Sentinel Real Estate Corp.*,
   2025 WL 1085319 .................................................................................................................... 3

*Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*,
   929 N.Y.S.2d 3 (2011) ............................................................................................................. 5

*Chadha v. Wahedna*,
   171 N.Y.S.3d 87 (App. Div. 2022) .......................................................................................... 5

*CyCan, LLC v. Palladian Health*,
   190 N.Y.S.3d 772 (App. Div. 2023) ........................................................................................ 5

*Garcia v. United States*,
   2019 WL 719198 (S.D.N.Y. Feb. 20, 2019) .......................................................................... 11

*Gibli v. Kadosh*,
   717 N.Y.S.2d 553 (App. Div. 2000) ........................................................................................ 5

*Great Am. Ins. Co. v. Gemstone Prop. Mgmt. LLC*,
   2025 WL 2196886 (S.D.N.Y. Aug. 1, 2025) ........................................................................... 7

*In re Spiegel, Inc.*,
   337 B.R. 821, 2006 WL 392074 (Bankr. S.D.N.Y. 2006) ....................................................... 7

*Israel v. Chabra*,
   12 N.Y.3d 158 (2009) .............................................................................................................. 7

*Johnson v. Lebanese Am. Univ.*,
   922 N.Y.S.2d 57 (App. Div. 2011) .......................................................................................... 5

*Jones v. Jacobs*,
   234 A.D.3d 594 (App. Div. 2025) ........................................................................................... 5

*Madeof, LLC v. Bronson*,
   2019 WL 1744262 (N.Y. Sup. Ct. Apr. 18, 2019) ................................................................... 6

*Marine Midland Bank, N.A. v. Cafferty*,
  571 N.Y.S.2d 628 (App. Div. 1991) ................................................................................... 7

*NML Capital v. Republic of Argentina*,
  621 F.3d 230 (2d Cir. 2010) ............................................................................................... 9

*Paulino v. Braun*,
   170 A.D.3d 506, 96 N.Y.S.3d 181 (1st Dep't 2019) .......................................................... 5

*RLS Assocs., LLC v. United Bank of Kuwait PLC*,
  380 F.3d 704 (2d Cir. 2004) ............................................................................................... 8

*Seaver v. Ransom*,
   120 N.E. 639 (1918) ........................................................................................................... 3

*Societe Nationale D'Exploitation Industrielle des Tabacs et Allumettes v.
  Salomon Bros. Int'l*,
  672 N.Y.S.2d 303 (App. Div. 1998) ................................................................................... 7

*Steinberg v. Sherman*,
   2008 WL 2156726 (S.D.N.Y. May 8, 2008) ...................................................................... 3

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.*,
  132 A.D.2d 604, 517 N.Y.S.2d 764 (2d Dept. 1987) ......................................................... 9

*Thailer v. LaRocca*,
  174 A.D.2d 731, 571 N.Y.S.2d 569 ................................................................................... 4

*United States v. Martinez*,
  151 F.3d 68 (2d Cir. 1988) ................................................................................................. 9

**<u>Statutes</u>**

N.Y. Gen Oblig. Law § 15-301(1) ............................................................................................ 7

**<u>Rules</u>**

FRCP 12(b)(6) ............................................................................................................................ 1
FRCP 13(a) .......................................................................................................................... 3, 10
NY CPLR § 213(2) .................................................................................................................. 10

iii

Defendants Omar Holding Corp. ("OHC") and New Life Holding Corp. ("New Life" and collectively with OHC, the "Moving Defendants"), by and through their counsel, hereby file this Memorandum of Law in further support of the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion").

## PRELIMINARY STATEMENT

Plaintiff's opposition papers fail to provide any grounds for the survival of this action. Plaintiff -- a sophisticated businessman who at the time of the relevant events in 2018 had for years prior been an owner and held executive positions with the corporate defendants -- does not and cannot argue that he did not knowingly sign the stock purchase agreements and release he now seeks to rescind.

Instead, Plaintiff's lengthy and convoluted opposition papers all boil down to the allegation that Plaintiff was purportedly duped into believing that he was going to be provided with a reciprocal release. Aside from the fact that Plaintiff's untrue and conclusory statements and the text messages annexed to the opposition in no way evidence any agreement on behalf of any of the defendants to provide any such reciprocal release, even if these allegations are taken as true (they are not) by the Court, the action must still be dismissed.[1] Simply put, *the governing agreements and the release are unambiguous and none contain any obligation to provide a release in favor of Plaintiff*.

In fact, this is not even a situation where the subject stock purchase agreements at issue are silent on whether a release will be issued in favor of Sami. To the contrary, Sami's contention that the Release is not valid because Sharif allegedly made an oral promise to provide a reciprocal

---

[1] OHC and New Life submit with this reply a declaration of Brendan J. DeRiggi, Esq., a partner with the law firm of Certilman Balin Adler & Hyman, LLP. Mr. DeRiggi was the attorney present when Sami signed the challenged agreements in June 2018. Mr. DeRiggi's declaration is submitted for the sole purpose of addressing the false narrative perpetuated in Plaintiff's opposition papers.

1

release in favor of Sami which was never delivered is belied by the OHC and New Life stock purchase agreements – <u>each of which contain explicit language providing that Sharif and his affiliates (including OHC and New Life) do not waive any claims they may have against Sami and/or his affiliates</u>. Specifically, the OHC Agreement at Section 15 (Exhibit "E") and 2018 New Life Stock Agreement at Section 14 (Exhibit "D")[2] each state:

> **Nothing in this Agreement shall be deemed or constitute a waiver of any rights that the Buyer [Sharif] and/or any of his affiliates may have against the Seller [Sami] and/or any of his affiliates with respect to any matter that is not expressly provided for in this Agreement.**

This point bears repenting – the agreements are not only devoid of any obligation to provide a release to Sami; to the contrary, *the plain language of the agreements expressly reserves all rights Sharif, as Buyer, and/or any of his affiliates (namely, OHC, New Life and the Liptis Entities) have or may against Sami and/or any of his affiliates*. As a matter of law, there can be no justifiable reliance on alleged oral promise that flatly contradicts the plain language of a written contract.

Moreover, Plaintiff's opposition also fails to address the several additional reasons why the action should be dismissed which were presented in the moving papers as follows:

- Most notably, <u>neither OHC nor New Life are parties to any of the stock purchase agreements that Sami seeks to rescind</u>. Neither OHC nor New Life had any rights or obligations under these agreements, and the First, Second and Third Causes of Action in the Complaint do not seek any relief against OHC or New Life;

- Second, Sami, a sophisticated businessman, signed a fully enforceable and valid Release (detailed below) *which precludes all of the claims in this action, including those against OHC and New Life*;

- To the extent any of the causes of action in the Complaint may be deemed to seek rescission of the 2017 agreement between Sami and Sharif in connection with the sale of the approximately 97% of Sami's stock in New Life (retaining 2 shares), any such claims are definitively barred by the statute of limitations; and

---

[2] Unless otherwise indicated, exhibits references shall be to the exhibits attached to the Campisi Declaration submitted in support of the moving papers (the "Campisi Dec."). (ECF Doc. No. 33)

2

- The causes of action in the Complaint are essentially the same as the affirmative defenses asserted by Sami in December 2019 in an Answer filed in response to OHC's claims against Sami in the related Promissory Note Action (described more fully below). As a result, these claims brought nearly 6 years later were compulsory counterclaims under FRCP 13(a) and should be dismissed in the Court's discretion.

Respectfully, Plaintiff's opposition provides no basis for the Court to grant relief as against OHC and/or New Life. To the extent that Sami believes that he has viable defenses in the pending 2020 Promissory Note Action sounding in fraud, lack of consideration, unconscionability and failure to provide a reciprocal release (although OHC and New Life contend that these are frivolous), Sami will have a full opportunity to assert those defenses in that action.[3]

For all these reasons and those more fully analyzed in the moving papers and below, all causes of action in the Complaint as against OHC and New Life should be dismissed with prejudice.

## ARGUMENT

## POINT I

**NO PRIVITY OF CONTRACT EXISTS BETWEEN SAMI AND NEW LIFE AND OHC, REQUIRING THAT ALL CLAIMS AGAINST EACH MUST BE DISMISSED**

As set forth in the moving papers, in order to enforce terms of a contract, or bring a breach of contract claim, a plaintiff and defendant must be in privity of contract. *See Seaver v. Ransom*, 120 N.E. 639 (1918). Moreover, the law is clear that "a claim for rescission cannot be maintained against a person who was not a party to the contract." *Steinberg v. Sherman*, No. 07 CIV. 1001, 2008 WL 2156726, at *7 (S.D.N.Y. May 8, 2008) (citing cases). *See also BH 336 Partners LLC v. Sentinel Real Estate Corp.*, No. 653867/2023, 2025 WL 1085319, at *7 (N.Y. Sup. Ct. Apr. 10, 2025.

---

[3] This action does not seek to rescind the Promissory Note subject to the pending prior litigation before Your Honor. Instead, Plaintiff seemingly alleges that the "reciprocal release" he purports to have been promised would have precluded the claims by OHC in the prior action.

Here, *Sami and Defendant Sharif are the sole parties to the OHC and New Life stock purchase agreements*. Neither company has any rights or obligations under these agreements. As a result of the foregoing, the First, Second, and Third Causes of Action which all seek rescission of the OHC and New Life Stock Purchase Agreements must be dismissed as against OHC and New Life, as must the Fourth Cause of Action as detailed below.

## POINT II

## THE ACTION IS BARRED BY THE RELEASE

Each of the claims in the Complaint are also subject to summary dismissal as violative of the Release executed by Sami in favor of, among others, OHC and New Life. Campisi Dec. at Exhibit "F". The Release explicitly released, among others, all Defendants, including OHC and New Life from "all actions, causes of action …. in law, admiralty or equity, which against the [Moving Defendants], or any of them, or any of their respective Affiliates, …." *Id*. at 1.

The Release stated that it may not be changed orally and has been executed freely, knowingly and voluntarily by the Releasor (Sami) without duress. Sami also acknowledged that he has been provided with sufficient time in which to consider this General Release and that, in deciding to execute the Release, he relied on his own judgment and was fully aware of its contents and of its legal effects." *Id.*

Notably, the documents signed by Sami on June 26, 2018 (to which OHC and New Life were not even parties) did not include a proposed release from Sharif or the other parties released (*i.e.*, a Reciprocal Release).

"The general rule is that "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties'" *Thailer v. LaRocca*, 174 A.D.2d 731, 733, 571 N.Y.S.2d 569 (2d Dep't 1991 (cleaned up).

4

"[A[ party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release." *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 929 N.Y.S.2d 3, 8 (2011). Plaintiff's opposition fails to cite any relevant, analogous and/or compelling authority of any such fraud perpetrated by Defendants, and certainly not as against OHC or New Life which were not parties to and had no obligations under the subject stock purchase agreements.

<u>None of the cases Plaintiff cites in opposition involve fraudulent schemes, crimes, and other misconduct that bear any relation to the facts here.</u> *See Jones v. Jacobs*, 234 A.D.3d 594 (App. Div. 2025) (defendant caused plaintiff to enter into release by threatening to withdraw New York Gaming Commission complaint that plaintiff had urged defendant to file, but defendant never actually filed); *CyCan, LLC v. Palladian Health,* 190 N.Y.S.3d 772, 775 (App. Div. 2023) (issue of fact as to whether defendant was fraudulently induced to enter into release due to undisclosed bribery scheme); *Chadha v. Wahedna*, 171 N.Y.S.3d 87, 89 (App. Div. 2022) (defendant "engaged in a fraudulent scheme to buy his shares in Wahed Inc. at deeply discounted values by fraudulently inducing him to enter into a series of stock repurchase agreements, misrepresenting the value of his shares, and, in breach of fiduciary duties owed to him, failing to disclose higher share prices that were being negotiated with third-party investors at the time."); *Paulino v. Braun*, 170 A.D.3d 506, 96 N.Y.S.3d 181 (1st Dep't 2019) (plaintiff pressured to sign release while still recovering from fractured pelvis and unable to work); *Johnson v. Lebanese Am. Univ.*, 922 N.Y.S.2d 57, 60 (App. Div. 2011) ("[A] question of fact exists whether it would be fair to enforce the release against plaintiff's discrimination claims when plaintiff was given the take-it-or-leave-it proposition of signing the document or not receiving the payment."); *Gibli v. Kadosh*, 717 N.Y.S.2d 553, 555 (App. Div. 2000) (voiding release that was the result of the parties' mutual mistake as to the extent

5

of plaintiff's injury); *Madeof, LLC v. Bronson*, No. 655107/2018, 2019 WL 1744262, at *6 (N.Y. Sup. Ct. Apr. 18, 2019) (plaintiff alleged that "she did not know, and had no reason to know, that [defendants] were acting in their own self-interest, contrary to the terms of the contract and their fiduciary duty").

In sum, none of the authority presented by Plaintiff support the relief sought in the Complaint.

### POINT III

### THE EXPLICIT TERMS OF THE OHC AND NEW LIFE AGREEMENTS DEFINITIVELY DEMONSTRATE THAT THERE WAS NEVER ANY ORAL PROMISE OF A RECIPROCAL RELEASE

Plaintiff's opposition essentially relies exclusively on the allegation of a broken promise by Sharif to deliver a reciprocal Release in return for the Release signed by Sami on June 26, 2024 (Exhibit "F" to the Campisi Decl.).[4]  Plaintiff is forced to resort to this argument because the express language of the OHC and New Life agreements indisputably disprove Sami's allegations that a reciprocal release was promised as material consideration by affirmatively reserving claims. *See* the OHC Agreement at Section 15 (Exhibit "E") and 2018 New Life Stock Agreement at Section 14 (Exhibit "D").

It would defy common sense to carve out this language in both agreements if there was an expected reciprocal general release to be provided in favor of Sami with or shortly after the execution of the agreements.[5]  Moreover, it is well-settled that "parol evidence may not be

---

[4] Although dismissal is warranted even if taken as true, the accompanying DeRiggi Declaration utterly refutes this allegation.

[5] Sami also expressly acknowledged that he was represented by counsel, or had the opportunity to be represented by counsel, in connection with the agreements. Specifically, each of the agreements further state at Section 12 (OHC Agreement) and Section 11 (2018 New Life Agreement) that: Each party acknowledges that he has been represented by counsel, or has been afforded the opportunity to be represented by counsel, in connection with this Agreement and the transactions contemplated hereby.

considered to prove any terms contradictory to the terms of the written, executed contracts." *In re Spiegel, Inc.*, 337 B.R. 821, 826, 2006 WL 392074 (Bankr. S.D.N.Y. 2006).

In addition, "[u]nder New York law, courts may determine as a matter of law that a party's reliance [is] unreasonable where the alleged misrepresentation is explicitly contradicted by the written agreement." *Great Am. Ins. Co. v. Gemstone Prop. Mgmt. LLC*, No. 23-CV-9100, 2025 WL 2196886, at *14 (S.D.N.Y. Aug. 1, 2025). *See also Societe Nationale D'Exploitation Industrielle des Tabacs et Allumettes v. Salomon Bros. Int'l*, 672 N.Y.S.2d 303, 303 (App. Div. 1998) (affirming dismissal of fraud claim because "the alleged oral representations that plaintiff's risk would be small and that defendants would get plaintiff out of the derivative swaps deals if its principal investment appeared to be at risk were meaningfully contradicted by the letter confirmation agreements"); *Marine Midland Bank, N.A. v. Cafferty*, 571 N.Y.S.2d 628, 630–31 (App. Div. 1991) ("Where the person claiming to have been defrauded has by specific contract provisions agreed to terms which are contrary to the oral promises allegedly relied upon, he himself would be guilty of deliberately misrepresenting his own true intentions and the parol evidence rule applies.").

Section 9 of the OHC Agreement and Section 10 of the 2018 New Life Agreement also provide that they are fully integrated and represent the complete understanding of the parties. OHC and New Life cannot be somehow imputed to have taken on any oral alleged obligation to provide a reciprocal Release to Sami. *See* N.Y. Gen Oblig. Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."); *Israel v.*

7

*Chabra*, 12 N.Y.3d 158, 167 (2009) ("[I]f parties decide to include a 'no oral modification clause' in their agreement, the statute is intended to facilitate its enforcement.").

Only now, incredibly, 6 years later and 5 years after OHC commenced an action in this Court to recover on the promissory note, does Sami seemingly contend that he was purportedly unsophisticated and did not understand the terms of the contracts he signed.[6]

## POINT IV

## THE OHC STOCK PURCHASE AGREEMENT IS VALID AND BINDING

Plaintiff's First Cause of Action alleges that the OHC Agreement is void due to a lack of consideration. But the OHC Agreement clearly provides for the sale of all of Plaintiff's 31.2886270 shares in OHC to Sharif for $577,335.00.

It is undisputed that Sami received consideration from Sharif in exchange for his shares in OHC. In Section 1(b) of the OHC Agreement, Sami explicitly acknowledges that this purchase price was previously paid by Sharif to Sami as a result of Sami's charging an amount equal to the purchase price for personal purposes on a corporate credit card of Liptis Pharmaceuticals USA, Inc., which Sharif became the 100% owner of and was responsible to satisfy on behalf of Sami. The Court's function is not to evaluate the adequacy of consideration. "So long as a contract provides some consideration, it may be minimal-even a peppercorn. Courts do not inquire into the value or adequacy of the consideration." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 380 F.3d 704, 709 (2d Cir. 2004).

As a result, Plaintiff's First Cause Action must also be dismissed for this reason.

---

[6] It should also be noted that the 2017 New Life agreement (pursuant to which Sami sold approximately 97% of his stock in New Life) contained mutual releases between Sami and Sharif.

## POINT V

## SAMI'S THIRD AND FOURTH CAUSES OF ACTION LACK MERIT AND SHOULD ALSO BE DISMISSED

Plaintiff's Third and Fourth Causes of Action sounding in Unconscionability and Breach of Contract fail for the same reasons analyzed in the moving papers, which have not been meaningfully rebutted in opposition. Neither OHC nor New Life was a party to the agreements which Plaintiff's claims arise from, they cannot be bound to the terms therein or any alleged oral agreement related to those agreements. As a result, the Court cannot, respectfully, order relief on the Fourth Cause of Action for Breach of Contract against either OHC or New Life.

With respect to the Third Cause of Action sounding in Unconscionability, as analyzed above, this cause of action does not seek relief against OHC and/or New Life; however, it would still fail because "the doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery." *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132 A.D.2d 604, 606, 517 N.Y.S.2d 764 (2d Dept. 1987). But even if OHC and New Life were parties to these agreements, unconscionability is meant to protect unsophisticated parties, not business owners and executives on equal playing fields such as Sami and Sharif. Compl. at ¶¶ 14, 17 and 21. "The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (citing *United States v. Martinez*, 151 F.3d 68, 74 (2d Cir. 1988)). Simply, there is no relief appropriate here and Sami will retain his unconscionability defense in the Promissory Note Action.

## POINT VI

### TO THE EXTENT THAT ANY OF PLAINTIFF'S CLAIMS RELATE TO THE 2017 NEW LIFE AGREEMENT, THEY ARE BARRED BY THE STATUTE OF LIMITATIONS

As detailed in the moving papers, Sami and Sharif, as it relates to New Life, entered into two stock purchase agreements. Pursuant to these agreements, Sami sold his shares of common stock in New Life to Sharif. In the 2017 New Life Agreement, dated April 1, 2017, Sami agreed to sell 64.6 of his 66.6 shares approximately (97%) of common stock in New Life to Sharif for $6,425,000.00. It is not clear if the Complaint seeks to rescind the 2017 New Life Agreement, and Sami did not address this issue in his opposition papers.

Plaintiff commenced this action by filing his Complaint on June 21, 2024, over 7 years after he entered into the 2017 New Life Agreement. Accordingly, the New York's six-year statute of limitations has run on any claim relating to this Agreement, which must be dismissed. NY CPLR § 213(2).

## POINT VII

### SAMI WAS REQUIRED TO BRING THESE CLAIMS AS COMPULSORY COUNTERCLAIMS

Plaintiff's opposition disingenuously indicates that the moving papers fail to provide any analysis of dismissal being appropriate under FRCP 13(a). But in actuality it is Plaintiff's opposition which provides no analysis or legal citations whatsoever.

As presented in the moving papers, pursuant to FRCP 13(a) and relevant Second Circuit precedent, any claims Sami believed he had regarding these transactions at issue in the Complaint should have been brought in 2019 as compulsory counterclaims to the Promissory Note Action. *See Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (instructing the district court to dismiss the action) ("Moreover, under Second Circuit case law, claims for rescission and enforcement arise out of the same transaction or occurrence. . . . We thus conclude that the action before us necessarily

10

constitutes a compulsory counterclaim"). Failure to file a compulsory counterclaim provides the Court with broad discretion which includes the dismissal of the subsequently filed Action. *See Andy Stroud, Inc. v. Brown*, 08 Civ. 8246 (HB), 2009 WL 539863, at *34 (S.D.N.Y. Mar. 4, 2009); *see also Garcia v. United States*, 2019 WL 719198, at *5 (S.D.N.Y. Feb. 20, 2019). Respectfully, it is submitted that a dismissal is an appropriate remedy here as Sami will not be prejudiced by the dismissal of the claims in the Complaint as against OHC and New Life because he will still retain his identical affirmative defenses to the claims against him in the prior Promissory Note Action.

## CONCLUSION

For all of these reasons, Defendants OHC and New Life respectfully request that this Court grant this Motion, enter an Order dismissing this action as against each in its entirety and with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
August 29, 2025

Respectfully submitted,

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN
*Attorneys for Defendants Omar Holding Corp.
and New Life Holding Corp.*
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200

By:   /s/ *Philip Campisi*
      Philip J. Campisi, Jr., Esq.