UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

SAMI OMAR,

                         Plaintiff,

    -against-                              **MEMORANDUM OF LAW**

SHARIF OMAR, LIPTIS HOLDINGS LLC, LIPTIS      24-cv-4758 (MMG)
PHARMACEUTICALS USA, INC., OMAR HOLDING
CORP., and NEW LIFE HOLDING CORP.,

                        Defendants.

-------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS BROUGHT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(5) AND (6) BY DEFENDANTS SHARIF OMAR, LIPTIS HOLDINGS LLC, AND LIPTIS PHARMACEUTICALS USA, INC.**


Respectfully submitted by:

**FEERICK NUGENT MacCARTNEY PLLC**
Office and Post Office Address
96 South Broadway
South Nyack, New York 10960
(845) 353-2000

*Attorneys for Defendants Sharif Omar, Liptis Holdings LLC, and Liptis Pharmaceuticals USA, Inc.*

TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................................ ii

I.  PRELIMINARY STATEMENT ............................................................................................. 1

II. ARGUMENT ........................................................................................................................... 3

    A.  The Action Is Barred by the Release ............................................................................. 3

    B.  The Parole Evidence Rule Bars Sami's Fraud Claims .................................................. 3

    C.  Sami Cannot Plead Unconscionability ........................................................................... 6

    D.  Lack of Privity Defeats Sami's Claims Against The Corporate Defendants ................ 7

    E.  Consideration Received, Laches in the Face of an Alleged Fraud, and the Statute of Frauds Preclude Sami's Claims ..................................................................................... 8

    F.  Sami Fails to Overcome His Lack of Proper Service on Sharif and Fails to Demonstrate Shariff Waived Service ............................................................................. 8

III. CONCLUSION ...................................................................................................................... 10

TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Anderson v. Sullivan*,
  No. 03CV4064 (DRH) (MLO), 2005 WL 1123772 (E.D.N.Y. May 9, 2005) .......................... 9

*Bank of Am. Nat'l Trust & Savings Ass'n v. Gillaizeau*,
  593 F. Supp. 239 (S.D.N.Y. 1984), *rev'd on other grounds by* 766 F.2d 709 (2d Cir. 1985) .... 4

*Bay Parkway Nat. Bank v. Shalom*,
  270 N.Y. 172 (1936) ................................................................................................. 4, 5

*Bersani v. General Acc. Fire & Life Assur. Corp., Ltd.*,
  36 N.Y.2d 457 (1975) ............................................................................................... 3-4

*BH 336 Partners LLC v. Sentinel Real Estate Corp.*,
  No. 653867/2023, 2025 WL 1085319 (Sup. Ct. N.Y. Cty. Apr. 10, 2025) ............................... 7

*Buckthorn, Ltd. v. Rollins Burdrick Hunter of N.Y. Inc.*,
  109 A.D.2d 8 (1st Dep't 1985) ..................................................................................... 6

*County Trust Co. of New York v. Mara*,
  242 A.D. 206 (1st Dept. 1934), *aff'd*, 266 N.Y. 540 (1935) ............................................ 4, 5, 6

*E. Refractories Co. v. Forty Eight Insulations, Inc.*,
  187 F.R.D. 503 (S.D.N.Y. 1999) .................................................................................. 10

*Giuffre v. Andrew.*,
  579 F.Supp.3d 429 (S.D.N.Y. 2022) ............................................................................... 6

*Manufacturers Trust Co. v. Grossman*,
  247 A.D. 199 (1st Dept. 1936), *aff'd*, 272 N.Y. 471 (1936) ................................................ 4

*Marine Midland Bank, N.A., v. Cafferty*,
  174 A.D.2d 932 (3d Dept. 1991) .................................................................................. 4

*Mayaguez S.A. v. Citibank, Inc.*
  16 Civ. 6788 (PGG), 2018 WL 1587597, (S.D.N.Y. Mar. 28, 2018) ..................................... 7

*McCarthy v. Option One Mtge. Corp.*,
  362 F.3d 1008 (7th Cir. 2004) ...................................................................................... 9

*Mount Vernon Trust Co. v. Bergoff*,
  272 N.Y. 192 (1936) ................................................................................................. 4, 5

*NML Capital v. Republic of Argentina,*
   621 F.3d 230 (2d Cir. 2010).................................................................................................. 7

*Passelaigue v. Getty Images (US), Inc.,*
   16 Civ. 1362 (VSB), 2018 WL 1156011, (S.D.N.Y. Mar. 1, 2008)..................................... 7

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.,*
   966 F. Supp. 2d 282 (S.D.N.Y. 2013)............................................................................. 9, 10

*Ponterio v. Kaye,*
   No. 06 Civ. 6289 (HB), 2007 WL 141053 (S.D.N.Y. Jan. 22, 2007)................................. 6

*Rothschild v. Manufacturers Trust Co.,*
   279 N.Y. 355 (1939)........................................................................................................ 4, 5

*Seaver v. Ransom,*
   224 N.Y. 233 (1918).......................................................................................................... 7

*Steinberg v. Sherman,*
   No. 07 CIV. 1001, 2008 WL 2156726, (S.D.N.Y. May 8, 2008)....................................... 7

*Super Glue Corp. v. Avis Rent A Car Sys., Inc.,*
   132 A.D.2d 604 (2d Dep't 1987)..................................................................................... 6-7

*United States v. Islip,*
   222 C.I.T. 852 (1988) ........................................................................................................ 9

*Vega v. Hastens Beds, Inc.,*
   339 F.R.D. 210 (S.D.N.Y. 2021).................................................................................... 8-9

*Yangming Mar. Trans. Corp. v. Foremost Int'l, Inc.,*
   No. 88 CIV. 1318 (CSH), 1990 WL 17729 (S.D.N.Y. Feb. 16, 1990).............................. 9

**Rules and Other Authorities**

Fed. R. Civ. P. 4(m)................................................................................................................... 9

Fed R. Civ. P. 12(b)(2)........................................................................................................... 8, 9

Fed R. Civ. P. 12(b)(5)........................................................................................................... 1, 9

Fed R. Civ. P. 12(b)(6)............................................................................................................... 1

New York's General Obligations Law § 15-303................................................................... 1, 8

Sharif Omar ("Sharif"), Liptis Holdings LLC ("Liptis Holdings"), and Liptis Pharmaceuticals USA, Inc. ("Liptis Pharma"), Defendants in this action, by and through their counsel, hereby file this Memorandum of Law in further support of their motion to dismiss the above-captioned action as against the aforementioned Defendants, pursuant to Federal Rule of Civil Procedure (the "Rules," and individually a "Rule") 12(b)(6) for failing to state a claim upon which relief can be granted and Rule 12(b)(5) for failure to timely serve the Summons and Complaint.

## I.  PRELIMINARY STATEMENT

Plaintiff Sami Omar ("Plaintiff or "Sami") is unable to save his Complaint because: [1] a valid Release bars all claims; [2] Sami fails to plead fraud, duress, or other facts sufficient to void the Release, nor can he under the parol evidence rule; [3] Sami received consideration for the written Release, but even if he did not, the Release is still valid under N.Y. General Obligations Law § 15-303; [4] Sami fails to plead unconscionability; [5] laches defeats the claims; [6] Sami's breach of contract claim is barred by the statute of frauds; [7] there is a lack of privity between Sami and the corporate Defendants in this action; and [8] Sami failed to effect service over Sharif.

Chiefly, Sami's opposition admits signing the relevant Agreements and Release, but argues that he was purportedly duped into believing that he was going to be provided with a reciprocal release, when the governing Agreements and Release are unambiguous and not one contains any obligation to provide a reciprocal release to Plaintiff. While Sami's factual argument is thoroughly refuted by the Reply Declaration of Brendan J. DeRiggi, Esq., who was present when Sami signed the challenged agreements in June 2018 and never heard Sharif make any oral promise to provide a reciprocal release (*see* ECF Doc. No. 46), the Agreements contain explicit language providing that Sharif and his affiliates (including Liptis Holdings, Liptis Pharma, OHC and New Life) do not waive any claims they may have against Sami and/or his affiliates:

1

> Nothing in this Agreement shall be deemed or constitute a waiver of any rights that the Buyer [Sharif] and/or any of his affiliates may have against the Seller [Sami] and/or any of his affiliates with respect to any matter that is not expressly provided for in this Agreement.

*See* Feerick Decl. at Exhibit "D" – Liptis Holdings 1% Agreement 6.26.2018 ¶ 15 (ECF Doc. No. 30-4), Exhibit "E" - Liptis Pharma 1% Agreement 6.26.2018 ¶ 15 (ECF Doc. No. 30-5), and Exhibit "G" - OHC Agreement 6.26.2018 ¶ 15 (ECF Doc. No. 30-7); *see also* Campisi Decl. at Exhibit "D" - 2018 New Life Stock Agreement 6.262018 ¶ 14. (ECF Doc. No. 33-4).

Where a Release is clear and unambiguous on its face and is knowingly and voluntarily entered, it will be enforced unless plaintiff shows a separate fraud independent from the subject of the release induced him. Here, Sami cannot point to a separate fraud because the Agreements contain merger clauses governing the subject matter of the Agreements, superseding any previous written or oral agreements with respect thereto. *See* Feerick Decl. at Exhibit "D" – Liptis Holdings 1% Agreement 6.26.2018 ¶ 9 (ECF Doc. No. 30-4), Exhibit "E" - Liptis Pharma 1% Agreement 6.26.2018 ¶ 9 (ECF Doc. No. 30-5), and Exhibit "G" - OHC Agreement 6.26.2018 ¶ 9 (ECF Doc. No. 30-7); *see also* Campisi Decl. at Exhibit "D" - 2018 New Life Stock Agreement 6.262018 ¶ 8. (ECF Doc. No. 33-4). There can be no justifiable reliance on an alleged oral promise that varies or contradicts the plain language of the written Agreements.

In sum, Sami cannot argue that Sharif - the Buyer - released or waived rights when the Agreements expressly reserve all rights the Buyer and/or any of his affiliates may have against Sami – the Seller - and/or any of his affiliates. The parol evidence rule prohibits Sami from offering proof of an oral agreement to vary or contradict the explicit language of the Agreements and binds him to his Release.

2

Secondarily, Sami argues that he did not have to serve Sharif because Sharif waived personal jurisdictional defenses, when he clearly did not. Sami does not challenge the operative law, which supports Sharif. Instead, Sami goes beyond the plain language of a consent agreement that never waived personal service to suggest it was waived. Sami's wordsmithing cannot save his claims against Sharif.

## II. ARGUMENT

### A. The Action Is Barred by the Release

The Complaint's claims are barred by the Release signed by Sami in favor of the Moving Defendants, as it explicitly releases all Defendants from "all actions, causes of action . . . in law, admiralty or equity, which against the [Moving Defendants], or any of them, or any of their respective Affiliates." *See* Feerick Decl. at Exhibit "F" at 1 (ECF Doc. No. 30-6). The Release provided that it may not be changed orally and was executed freely, knowingly, and voluntarily by Sami without duress. *Id.* It stated that Sami relied on his own judgment and was fully aware of its contents and legal effects. *Id.* No mention of a reciprocal release is made, not in the Release or any of the Agreements signed by Sami on June 26, 2018.

### B. The Parole Evidence Rule Bars Sami's Fraud Claims

Sami continuously ignores that the parol evidence rule bars extrinsic evidence of any ancillary oral agreements, because Sami signed the promissory note for the purpose of presenting the document to a bank. The Court of Appeals highlighted the significance of the parol evidence rule when considering evidence of a transaction that contravenes public policy:

> The parol evidence rule, more than an evidentiary principle and in truth, a rule of substantive law, has been characterized as 'the most discouraging subject in the whole field of Evidence'. Although there is some conflict, the weight of authority is to the effect that parol evidence is admissible, as between the parties to a written agreement and their privies, to show that a writing which purports to be a contract is not a contract but a sham to further a plan to induce a third party to enter into it

3

> or to take or refrain from taking some affirmative action. But when the outcome of the admission of parol evidence, to the effect that the parties to the written contract of insurance did not intend it to be an agreement of any force or efficacy, would be contrary to law and public policy, such proof would be inadmissible and the written contract . . . would be enforced according to its terms.

*Bersani v. General Acc. Fire & Life Assur. Corp., Ltd.*, 36 N.Y.2d 457, 460-61 (1975) (citations omitted).

It is against public policy to permit a defense such as that presented here, where the promissory note was intended to be presented to a bank and intended to be used to deceive the bank examiners. *See, e.g., Rothschild v. Manufacturers Trust Co.*, 279 N.Y. 355 (1939); *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192 (1936); *Bay Parkway Nat. Bank v. Shalom*, 270 N.Y. 172 (1936); *County Trust Co. of New York v. Mara*, 242 A.D. 206 (1st Dep't 1934), *aff'd*, 266 N.Y. 540 (1935); *Manufacturers Trust Co. v. Grossman*, 247 A.D. 199 (1st Dep't 1936), *aff'd*, 272 N.Y. 471 (1936). The "sham transaction" rule bars introduction of parol evidence and requires a court to enforce the written agreement pursuant to its express terms. *See Bersani*, 36 N.Y.2d at 450–61; *Bank of Am. Nat'l Trust & Savings Ass'n v. Gillaizeau*, 593 F. Supp. 239, 242–43 (S.D.N.Y. 1984) (collecting cases), *rev'd on other grounds by* 766 F.2d 709 (2d Cir. 1985); *Marine Midland Bank, N.A. v. Cafferty*, 174 A.D.2d 932, 933 (3d Dep't 1991) ("Where the person claiming to have been defrauded has by specific contract provisions agreed to terms which are contrary to the oral promises allegedly relief upon, he himself would be guilty of deliberating misrepresenting his own true intentions and the parol evidence rule applies.").

In *Rothschild*, the Court of Appeals explained that:

> Banking is a business affected with a public interest. Its nature makes it peculiarly an object of legislative solicitude in order that depositors and stockholders may be protected and proper management by those responsible therefore secured according to legislative theories of public welfare. . . . [T]he stability of banks is a matter of such public concern that the State should not sanction any device intended to give

4

> a false appearance to a transaction or increase the apparent stability as contrasted with the true condition of a bank.

*Rothschild*, 279 N.Y. at 359.

In *Mount Vernon Trust Co. v. Bergoff*, 272 N.Y. 192 (1936), the Court of Appeals held that public policy requires that a person who, for the accommodation of a bank, executes an instrument which is in form a binding obligation, be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced. As part of a banking transaction, the defendant delivered her promissory note to the bank. When sued upon her promissory note, the defendant defended by asserting a failure of consideration for her promise. The court held that the defendant was chargeable with knowledge that, by delivering the promissory note in suit, she was aiding the bank in concealing the actual transaction and, under such circumstances, was liable for the amount of the note; the question of consideration was immaterial. *See id.* at 195-96.

In *Bay Parkway National Bank*, the Court of Appeals noted that, generally, courts do not aid either party to an illegal contract, before holding that a maker of note who gives the note to bank knowing that it is to be treated as an asset of bank and that bank receivers would be deceived and depositors would continue their relations with bank on faith of an assumed solvency is estopped from pleading the defense of no consideration. *See Bay Parkway Nat'l Bank*, 270 N.Y. at 176.

In *County Trust Co. of New York*, the answers admitted making the notes but pleaded that they were made for the plaintiff's accommodation without consideration; that the plaintiff was not a holder in due course; and that there was a delivery dependent on a condition precedent which never came into effect. The Appellate Division held that defendants were estopped on public policy grounds from setting up a secret agreement with the plaintiff that they would not have to pay the notes. The bank was not a party to this agreement but the notes in suit were given by

5

defendants in adjustment of the obligation assumed thereby. The "sham transaction" rule was explained as follows:

> A person may not participate in a transaction, the object of which is to give the assets of a bank a more favorable appearance than they would otherwise have and then except liability upon the obligation given to create that appearance.

*County Trust Co. of N.Y.*, 242 A.D. at 212.

Here, Sami admits that the promissory note was prepared for presentation to a bank but asserts a defense that it was a "sham transaction". *See* Sami Decl. ¶¶ 37-39. (Case No. 1:19-cv-06360-ER, ECF Doc. No. 29 filed 11.06.19 at pg. 11).[1] Sami is estopped from claiming the promissory note is a sham, or lacks consideration, or is otherwise unenforceable. Yet, here, Sami further argues that he was promised a reciprocal release that discharged the promissory note before expiration of its stated 20-year term and before the bank's interest in the promissory note terminated. Under these circumstances, the promise of a reciprocal release cannot be used to accomplish the same objective. The parol evidence rule bars proof of any oral agreement that varies or contradicts the signed document during the efficacy of the loan. *See Buckthorn, Ltd. v. Rollins Burdrick Hunter of N.Y. Inc.*, 109 A.D.2d 8, 11 (1st Dep't 1985) ("Equity has realized the benefits of its contractual agreements with Citibank. It cannot now be heard, by the introduction of parol evidence, to challenge those portions of the written agreements setting forth its obligations.").

## C. **Sami Cannot Plead Unconscionability**

The doctrine of unconscionability "is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery." *Super Glue Corp. v. Avis Rent A Car Sys., Inc.*, 132

---

[1] The Court can take judicial notice of Sami's affidavit in a different case. *See Giuffre v. Andrew*, 579 F. Supp. 3d 429, 436 (S.D.N.Y. 2022); *Ponterio v. Kaye*, No. 06 Civ. 6289 HB, 2007 WL 141053, n.2 (S.D.N.Y. Jan. 22, 2007) (taking notice "of the pertinent documents to [plaintiff's] prior state court litigation").

A.D.2d 604, 606 (2d Dep't 1987). It is also not meant to protect a sophisticated businessman from the consequences of his deliberate decisions. "The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (citation omitted). It has no place in this action.

Moreover, "[t]he determination of unconscionability is a matter of law for the Court to decide." *Mayaguez S.A. v. Citibank, Inc.*, 16 Civ. 6788 (PGG), 2018 WL 1587597, at *12 (S.D.N.Y. Mar. 28, 2018) (alteration in original) (collecting cases). This Court can—and should—dismiss the unconscionability claims based on the utter lack of allegations of substantive or procedural unconscionability. *See Passelaigue v. Getty Images (US), Inc.*, 16 Civ. 1362 (VSB), 2018 WL 1156011, at *5 (S.D.N.Y. Mar. 1, 2008) (granting motion to dismiss where plaintiff did not allege any facts that "[p]laintiff's bargaining power, experience, and/or education were limited or [that] [p]laintiff was under any sort of duress or pressure to sign the [contract] without reading it," there were no "allegations that [plaintiff's counterparty] did anything so as to effectively deprive [p]laintiff of a meaningful choice," and the contract was not procedurally unconscionable).

D.  **Lack of Privity Defeats Sami's Claims Against the Corporate Defendants**

To enforce terms of a contract, or bring a breach of contract claim, a plaintiff and defendant must be in privity of contract. *See Seaver v. Ransom*, 224 N.Y. 233 (1918). "A claim for rescission cannot be maintained against a person who was not a party to the contract." *Steinberg v. Sherman*, No. 07 CIV. 1001, 2008 WL 2156726, at *7 (S.D.N.Y. May 8, 2008) (collecting cases); *see also BH 336 Partners LLC v. Sentinel Real Estate Corp.*, No. 653867/2023, 2025 WL 1085319, at *7 (Sup. Ct. N.Y. Cty. Apr. 10, 2025).

7

Here, only Sami and Sharif signed the agreements. Liptis Holdings and Liptis Pharma are not parties to the operative agreements. Neither company has any rights or obligations under these agreements. Consequently, the Complaint's claims against Liptis Holding and Liptis Pharma must be dismissed.

E.   **Consideration Received, Laches in the Face of an Alleged Fraud, and the Statute of Frauds preclude Sami's Claims**

Sami's opposition does not challenge the defense that New York's General Obligations Law § 15-303 shall enforce a written release in the absence of consideration. Thus, notwithstanding that consideration was recited in the Agreements, the signed Release is valid and enforceable. Likewise, if, as Sami pretends, he discovered the purported fraud practiced upon him within days of June 26, 2018, his failure to promptly seek a reciprocal release constitutes ratification of the terms of the Release and Agreements and defeats any claims for rescission. He offers no excuse for his delay. Furthermore, the 2017 Agreements between Sami and Sharif cannot be rescinded since any such claims are barred by the six-year Statute of Limitations. And, because the Agreements contain merger clauses, Sami's demand for a reciprocal release stands outside the four corners of the Agreements and are barred by the Status of Frauds.

F.   **Sami Fails to Overcome His Lack of Proper Service on Sharif and Fails to Demonstrate Sharif Waived Service**

Sami attempts to claim that because Sharif waived his jurisdictional defenses, he waived service. Mem. Opp. 29. Yet Sami admits the frailty of his position. Sami concedes that the provision at issue "could have been clearer." *Id.* Sami even confirms that the cases cited by Sharif, which demonstrated that a waiver of jurisdictional defenses and a waiver of service are two separate legal concepts, and a waiver of one does not entail a waiver of the other. *See id.*

"Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notices to the

8

defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217–18 (S.D.N.Y. 2021); *see also Anderson v. Sullivan*, No. 03CV4064 (DRH) (MLO), 2005 WL 1123772, at *3 (E.D.N.Y. May 9, 2005) (collecting cases) ("There would be no reason to separately list insufficient service [in Rule 12(b)] if the defense of lack of personal jurisdiction subsumed both of them." (quoting *United States v. Islip*, 222 C.I.T. 852, 857 (1988))); *Yangming Mar. Trans. Corp. v. Foremost Int'l, Inc.*, No. 88 CIV. 1318 (CSH), 1990 WL 17729, at *1 (S.D.N.Y. Feb. 16, 1990) ("Defendant on this motion is attempting to assert insufficiency of service of process under Rule 12(b)(5) . . . , a quite different defense from lack of jurisdiction over the person under Rule 12(b)(2).").

Sami could have, but did not, obtain a more fulsome, omnibus waiver that covered both jurisdictional defenses and waiver of service. Sami did not. *See generally* Mem. Supp. 19 n.4 (gathering cases). "While parties may pursue their litigation strategies of choice, they must be prepared to accept the attendant risks." *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004). Sami chose his litigation strategy, and it was a strategy that did not relieve Sami of his obligation to serve Sharif or preclude Sharif from raising Sami's failure to effect proper service. Sami cites no case law to the contrary, and for good reason: Sami knows his position is legally specious.

Finally, as a throw away, "Sami respectfully requests an extension of time to serve Sharif with process." Mem. Opp. 29. Sami ignores that, as Sharif demonstrated in his motion papers, Rule 4(m) provides, *inter alia*, that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

9

"Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (citing *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999)). "An attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." *Ping Chen* at 306 (citing *Eastern Refractories Co.* at 505).

Again, Sami's failure to serve Sharif is not an exceptional circumstance beyond Sami's control: It is due to Sami (or his attorney's) apparent misplaced reliance. As a matter of law, that cannot constitute good cause and Sami's request cannot be granted. *See id.*

## CONCLUSION

Based on the foregoing, Defendants Sharif, Liptis Holdings, and Liptis Pharma respectfully request that this Court grant this Motion to Dismiss, enter an order dismissing this action against them in the entirety and with prejudice, together with such other and further relief as this Court deems just and proper.

Dated: South Nyack, New York
September 4, 2025

Respectfully Submitted By:

FEERICK NUGENT MacCARTNEY PLLC
*Attorneys for Sharif Omar, Liptis Holdings LLC, and Liptis Pharmaceuticals USA, Inc.*
96 South Broadway
South Nyack, New York 10960
(845) 353-2000

By: _____
Donald J. Feerick, Jr. (df 3299)
Christopher B. Pavlacka, Esq.

## WORD COUNT CERTIFICATION

In accordance with the Judge's Individual Part Rules, the undersigned certifies that the word count in this Memorandum of Law (excluding the caption, signature block, and this certification), as established using the word count on the word-processing system used to prepare it, is 3,243 words.

Dated: South Nyack, New York
September 4, 2025

Respectfully submitted,

_____
Donald J. Feerick Jr.